583 P.2d 270

**In the Matter of the ESTATE of Leo Clyde BEAMAN, Deceased.**

**Alma BEAMAN, Appellant,**

**v.**

**Leo Leslie BEAMAN, Personal Representative of the Estate of Leo Clyde Beaman, Deceased, Appellee.**

**No. 1 CA–CIV 3818.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 1, 1978.

Filler, Paytas, Shannon & Fleming, P. C. by Charles A. Filler, Scottsdale, for appellant.

Law Offices of Jack C. Warner by Harry E. Cawood, Phoenix, for appellee.

## OPINION

EUBANK, Presiding Judge.

The primary question raised by this appeal is whether A.R.S. § 14–2204 (Uniform Probate Code § 2–204), *infra*, requires that a waiver of rights by a surviving spouse in a decedent spouse's estate be reduced to writing and signed by the surviving spouse before it is effective. The trial court was of the opinion that the statute did not require a writing and denied appellant's petition to establish her rights as surviving spouse under her decedent husband's will, and for an allowance in lieu of homestead, for exempt property and for a family allowance.

The trial court, following a hearing, denied appellant relief. The court based its decision on evidence of an oral agreement between the deceased and the appellant indicating a property settlement, and evidence of an oral waiver by appellant of her rights in her deceased husband's estate. Appellant appealed from the January 11, 1977 order denying her relief. We disagree with the trial court, as a matter of law, and reverse the order.

The appellant and Leo Clyde Beaman, the deceased, were married on October 23, 1973, at Marion, Illinois. The deceased had two grown children, a son and daughter, by a prior marriage. On May 9, 1973, five months before his marriage to appellant, the decedent executed his will leaving all of his estate to his son and daughter, share and share alike, and appointing his son, Leo L. Beaman, executor of his estate. By the time he died on July 8, 1976, decedent had not changed the provisions of his will, and was still married to the appellant. The will, of course, did not mention or provide for the appellant.

On November 12, 1976, appellant filed her petition to establish her rights under her deceased husband's will. In response, the executor raised defenses of intentional exclusion, renunciation, property settlement and waiver of rights. Following a hearing on January 5, 1977, the trial judge found in favor of respondent-appellee, as follows:

1. Petitioner, Alma Beaman, left for Illinois on or about May 8, 1976, never intending to return to her husband, Leo Clyde Beaman, because of marital difficulties.

2. When Petitioner left the state, she took cash, an automobile and other personal property. And, at this time, the deceased was in the hospital.

3. Leo Leslie Beaman, Personal Representative and son of Leo Clyde Beaman by a prior marriage, testified that the day before petitioner left for Illinois she stated to him: "She said again that she was taking her things and that she was leaving the mobile home and the mobile home

lot and his personal effects and she says this belongs to you kids. She says I am leaving—I am not coming back. You take it—it is rightfully yours."

4. Petitioner left behind at the couple's residence only such property as she felt belonged to her husband or items she didn't want and that in so doing she intended a complete property settlement with her husband.

5. The refusal by Leo Clyde Beaman to sign the papers to transfer the title to the automobile to the Petitioner did not prevent a complete property settlement. It was communicated to petitioner that she could accomplish the transfer without his signature and, in fact, she did such.

The Court therefore finds that the provisions of A.R.S. § 14–2204 are met, specifically,

A. There was a complete property settlement; and

B. The settlement was in anticipation of divorce or dissolution of the marriage.

The Court further finds that consequently the petitioner had waived her rights to allowance in lieu of homestead, exempt property and family allowance in the property of Leo Clyde Beaman, deceased, and had renounced all benefits which might pass to her from his estate.

IT IS THEREFORE ORDERED that the petition be denied.

Respondent-appellee contends that A.R.S. § 14–2204 (U.P.C. § 2–204) "clearly indicates that a waiver may be effected either through a written contract *or* a complete property settlement entered into after or in anticipation of legal separation, divorce or dissolution of marriage." He further contends that "[T]he acceptance and taking by Appellant of a substantial amount of property held in the joint names of Appellant and decedent on or about May 8, 1976, was such a complete property settlement in anticipation of legal separation, divorce or dissolution of marriage." [1] No authority, other than A.R.S. § 14–2204 (U.P.C. § 2–204), is cited to support this proposition of settlement.

A.R.S. § 14–2204 (U.P.C. § 2–204) reads:

The rights of a surviving spouse under this title may be waived, wholly or partially, before or after marriage, by a written contract, agreement or waiver signed by the party after a fair disclosure. Unless the contract provides to the contrary, a waiver of all rights in the property or estate of a present or prospective spouse, or a <u>complete property settlement entered into after or in anticipation of legal separation, divorce or dissolution of marriage is a waiver</u> of all rights to an allowance in lieu of homestead, exempt property and family allowance by each spouse in the property of the other and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will executed before the waiver <u>or property settlement</u>. A waiver of all rights does not affect the rights of each spouse to his share of community property, in the absence of contrary provision; but a complete settlement terminates rights to community property in assets then owned or thereafter acquired, unless the settlement agreement provides to the contrary. (Emphasis by appellee)

The portion of the statute underlined for emphasis is the basis of appellee's contention. We disagree with appellee's contention.

■ The fundamental rule in statutory *interpretation* is to ascertain and give effect to the intention of the legislature. *Phoenix Title & Trust Co. v. Burns,* 96 Ariz. 332, 395 P.2d 532 (1964). The clear import of the words used in A.R.S. § 14–2204 requires "a written contract, agreement or waiver signed by the party after a fair disclosure." The statutory clauses emphasized by appellee must be read together with the rest of the statute. When this is done, the emphasized parts merely describe aspects of the required written contract, agreement or waiver. In addition, other statutes in *pari materia* with A.R.S. § 14–

---

1. This is a statute of frauds argument.

2204 require a writing, such as A.R.S. § 14–2110 (Advancements), § 14–2502 (Wills), § 14–2801 (Renunciation), § 25–317 (Separation or Property Agreement), and in certain cases A.R.S. § 44–101 (Statute of Frauds). Thus, the legislature has been consistent in requiring a writing in the same and related areas of the law. *See* Professor Richard W. Effland's *Arizona Probate Code Practice Manual* (Ariz. State Bar Ass'n 1973) (ch. 4 p. 4–2).

■ We hold that A.R.S. § 14–2204 (U.P.C. § 2–204) requires a surviving spouse to execute a written waiver of rights in the estate of the deceased spouse or a signed property agreement in order to effectively waive rights under the statute and the deceased spouse's will. Since appellant did not execute such a writing, A.R.S. § 14–2204 (U.P.C. § 2–204) has no application to her rights in the estate.

Appellant correctly advocated at the trial court and in this Court that A.R.S. § 14–2301 (U.P.C. § 2–301), which specifically deals with a spouse omitted from a will, was the applicable statute to the facts involved here. We agree. The statute reads as follows:

A. If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will unless it appears from the will that the omission was intentional or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

B. In satisfying a share provided by this section, the devises made by the will abate as provided in § 14–3902. (*Id.*)

■ This section treats the omitted spouse in the same manner as the pretermitted child, A.R.S. § 14–2302 (U.P.C.

§ 2–302), and grants the omitted spouse an intestate share in the deceased spouse's estate. The purpose of this approach is to preserve the remainder of the will while still providing for the omitted spouse. *See* D. H. O'Connell & R. W. Effland, *Intestate Succession and Wills: A Comparative Analysis of the Law of Arizona and the Uniform Probate Code*, 14 Ariz.L.Rev. 205, 235 (1972). *See also* John T. Gaubatz, *Notes Toward A Truly Modern Wills Act*, 31 U.Miami L.Rev. 497, 551–54 (1977). Both A.R.S. § 14–2301 (U.P.C. § 2–301) and § 14–2302 (U.P.C. § 2–302) differ from A.R.S. § 14–2204 (U.P.C. § 2–204), *supra*, in that extrinsic evidence is admissible to show that a transfer of property outside the will by the testator to the omitted spouse or pretermitted child was intended to be a transfer in lieu of a testamentary provision.[2] A good example of the nature of this evidence is offered by Professors O'Connell and Effland as follows:

. . . [S]uppose the testator executes a will providing for his children, later marries a second wife, and takes out a large life insurance policy payable to her, stating orally that this is to provide for her because his will makes no such provision. Evidence as to the statement would be admissible to preclude the second wife from upsetting the will. Such evidence would be barred under present [now former] Arizona law since the testator's intent can only be determined from the will provisions, and the will would be revoked. Although the Code opens the door to the admission of parol evidence, it is more likely to accomplish the testator's intent. (14 Ariz.L.Rev. at 236)

In Professor Effland's *Arizona Probate Code Practice Manual, supra,* he discusses A.R.S. § 14–2301 (U.P.C. § 2–301) as follows:

If a testator executes a will and later marries, the Code gives the surviving spouse an intestate share unless (a) the will shows that the omission was intentional, or (b) the testator makes a trans-

---

**2.** A.R.S. § 14–2302 would now require a different result from that arrived at in *DeCoste v.*

*Superior Court,* 106 Ariz. 50, 470 P.2d 457 (1970). *See* 13 Ariz.L.Rev. 513, 518 (1971).

fer of property outside the will which is shown to have been intended a substitute for provision by will (ARS 14–2301). Although this is a conceptual change from the prior law which provided for revocation by subsequent marriage, the change is more apparent than real. The intestate share of the surviving spouse is the entire estate unless there are children by a prior marriage (See Manual § 2.2). Hence, the will is in most cases nullified if the spouse survives.

The section is designed to guard against unintentional disinheritance. It does not apply if the will states an intent to make no provision for a later spouse. Nor does it apply if before or after the marriage the testator makes some other provision for the spouse (a living trust, joint tenancy with right of survivorship, annuity, outright gift, or life insurance payable to the spouse) if this other provision was to take the place of a provision by will. The statute makes "statements of the testator" admissible to show intent, but also permits other evidence to establish this. (*Id.* § 4.2, at 4–1 through 4–2)

■ In his answering brief, appellee, apparently recognizing the efficacy of appellant's reliance on A.R.S. § 14–2301 (U.P.C. § 2–301), argues that:

The statute [§ 14–2301] is clearly satisfied by the evidence in this case which shows that the decedent did provide for the Petitioner [appellant] by a transfer outside the will and the statements of both the Petitioner and the decedent clearly indicated that intent of this transfer was that it be in lieu of a testamentary disposition, with the amount of the transfer being further evidence that this was the effect of the transfer and the intent of the parties.

This constitutes a different argument than was offered in the trial court, but it recognizes the rule that we will affirm the trial court if it was right for the wrong reason.

■ Appellee's problem of proof here is substantial. He must prove that "[T]he testator provided for the spouse by transfer

outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence." A.R.S. § 14–2301 (U.P.C. § 2–301). The proof consisted of the following testimony:

The appellant testified that, when she left Arizona for Illinois in May of 1976, the vehicle she took was her vehicle, purchased by her in 1972 before the marriage; that the $1,650 she took from the savings account was her personal money that she deposited in 1975; and that the only other items taken from the mobile home were personal clothing and dishes. She testified that she left furniture, a TV and a stereo-record player, clothing and other personal items in the home. She also testified that no agreement was made between her and her husband not to make a claim against the other's estate in the event of the death of one of them.

The son and executor, Leo L. Beaman, testified that his father was in the hospital when appellant withdrew $1,650 from the couple's joint savings account and left the Phoenix area, and that she told him before she left that due to the couple's marital problems, she was leaving with what was hers. "She said again that she was taking her things, that she was leaving the mobile home and the mobile home lot and his personal effects; and she says, 'This belongs to you kids.' She says, 'I am leaving. I am not coming back. You take it. It is rightfully yours.'" He testified that he had talked to his father at the time appellant left and his father was pleased with her leaving. Appellee could not recall whether or not there had been any agreement between his father and appellant respecting their property. Appellee testified that his father showed him his will, when his father was discharged from the hospital, and said that he was leaving the mobile home and the lot to appellee and his sister. Finally, he testified that appellant had signed off her joint interest in the mobile home by letter.

The wife of the appellee testified that following the death of Mr. Leo Clyde Beaman she had a telephone conversation with the appellant in which appellant said to her, "she knew what was there and that she wasn't interested in any of it and that the sooner all this was over, the better it would be for everybody, and that she was very willing to write this little note, [to] get it over with." Additionally, she told appellee's wife that "everything that was here this was the children's property . . .."

Wanda Lott, the daughter of the deceased, testified that she had talked to the appellant before she left Phoenix and appellant said, in effect, that she wanted nothing of Clyde's, and that she just wanted the things that she brought.

Finally, David Lott, the daughter's husband, related a telephone conversation with appellant to the effect she was leaving and she wanted to know if Wanda was upset with her.

Neither this summary of testimony nor the record contains any substantial evidence that the testator provided or intended to provide for the appellant by transfer of property outside the will in lieu of a testamentary provision in the will. There is no such evidence. The evidence does show, as the trial court found, that appellant attempted to effect orally a property settlement and waiver of rights, both of which must be in writing in order to be effective. A.R.S. § 14–2204 (U.P.C. § 2–204); § 25–317.

We hold, therefore, that appellee failed to prove a transfer to appellant as an omitted spouse pursuant to A.R.S. § 14–2301 (U.P.C. § 2–301).

■ Finally, appellant alleges that appellee did not properly raise the issue of waiver as an affirmative defense as required by Rule 8(d), Rules of Civil Procedure, 16 A.R.S. The answer merely denied the corresponding number of the complaint and then affirmatively alleged a transfer of property under A.R.S. § 14–2301 (U.P.C. § 2–301), *supra*, and a waiver of rights under A.R.S. § 14–2204 (U.P.C. § 2–204), *supra*. No claim is made that appellant was misled by the answer and no motion was made to strike the pleading. Further, the record fails to show that the issue was ever directly presented to the trial court. Failure to do so waives any such error on appeal.

For the reasons stated, we reverse the judgment of the trial court, and remand to the trial court in order that judgment can be entered in favor of the appellant.

JACOBSON and OGG, JJ., concur.