402 So.2d 418 (1981)
ESTATE of Emma Geer Davis Kennedy GANIER, Deceased.
Connie Davis DOOLAN, As Personal Representative of the Said Estate, Appellant,
v.
Estate of Frederic F. GANIER, Deceased, Appellee.
No. 79-200.
District Court of Appeal of Florida, Fifth District.
May 27, 1981.
Rehearing Denied June 12, 1981.
*419 Richard S. Graham, Daytona Beach, for appellant.
Ollie Lancaster, Jr. and John R. Godbee, Jr., Daytona Beach, for appellee.
SHARP, Judge.
The personal representative of Emma Kennedy Ganier's estate appeals the lower court's judgment declaring Frederic Ganier was a "pretermitted spouse" pursuant to section 732.301, Florida Statutes (1979) and allowing him to receive one half of Emma's estate.[1] Frederic died before the conclusion of the proceedings below, and his personal representative was substituted in his place. We reverse the judgment.
Emma, a 79 year old widow, met Frederic, a 76 year old widower, in 1973 at a boarding house in Daytona Beach. They became "inseparable" shortly thereafter. Emma received $12,000.00 a year in dividend income and social security, and Frederic had an annual income of approximately $4,800.00 from social security and a pension from General Dynamics, where he had worked as a chief maintenance man. They pooled their resources and paid their joint living expenses out of a joint account at the *420 Atlantic First National Bank. Emma retained in her sole name a checking account at the Atlantic First National Bank and a savings account at the Security First Federal Savings & Loan Association, in Daytona Beach. Frederic testified that Emma gave him her two diamond rings in 1977 to sell to a friend for cash to pay their joint bills. Frederic kept his more valuable diamond ring however.
Emma made her will in 1977. She left her bank accounts at Security First Federal and the Atlantic Bank to Frederic, various specific bequests (including her jewelry) to her granddaughter and great-granddaughter, and the residue to her two granddaughters. Frederic made his will in 1976. Emma was his sole beneficiary, and her granddaughters were contingent beneficiaries. His 1978 will named Emma or his step-son as sole beneficiary.
In early 1978, Emma broke her hip and was unable to move about except with the aid of a walker. She required care by a nurse and Frederic. Frederic decided to marry Emma in July 1978. Shortly thereafter, Emma suffered a debilitating stroke. Frederic filed a petition to have her declared incompetent on November 28, 1978. He was appointed her guardian on December 15, 1978. She was then in the Halifax Hospital. She died on January 7, 1979.
After Emma had her stroke but before she was declared incompetent, Frederic had Emma close out her account at the Atlantic Bank. It had a balance of $1,756.00. These funds were deposited into the joint account. On December 15, 1978, Frederic took Emma's $4,500.00 dividend check, kept $1,000 in cash and put the balance in their joint account at the Atlantic Bank. On December 16, 1978, he withdrew $10,000 from Emma's savings account at Security First Federal and used it to open an account for himself at the Sun Bank. It was spent in full over a six month period, in small cash withdrawals. He withdrew another $2,750 from Emma's savings also on December 26, 1978, and deposited it in the joint account at the Atlantic Bank. He never accounted for any of these funds.
The trial court held that Frederic was a "pretermitted spouse" because no testimony or evidence was offered to support the view that Emma contemplated marriage to Frederic at the time she executed her will and because the two bank accounts specifically bequeathed to Frederic by Emma in her will "lapsed" when they were closed or reduced to small balances shortly before her death. The personal representative for Emma's estate proved that Frederic, acting as Emma's guardian after she was declared incompetent, expended or exhausted the bank account funds totalling some $17,000.00. Frederic did not account for these funds, and he testified that he thought these funds belonged to him. The trial court ruled that whether or not Frederic misappropriated or misspent Emma's funds was immaterial.
We reverse this judgment because the record clearly shows that Frederic was "provided for" in Emma's will, at least prima facie, within the meaning of section 732.301, Florida Statutes (1979). The "pretermitted spouse" statute provides:
When a person marries after making a will and the spouse survives the testator, the surviving spouse shall receive a share in the estate of the testator equal in value to that which the surviving spouse would have received if the testator had died intestate, unless:
(1) Provision has been made for, or waived by, the spouse by prenuptial or postnuptial agreement;
(2) The spouse is provided for in the will; or
(3) The will discloses an intention not to make provision for the spouse.
The share of the estate that is assigned to the pretermitted spouse shall be obtained in accordance with § 733.805.
Section 732.301, Florida Statutes (1979). The sole question in this case is whether Frederic was "provided for" in Emma's will,[2] as none of the other exceptions are applicable.
*421 Statutes in many states provide that under various circumstances a will is revoked or partially revoked by the subsequent marriage of a testator. 79 Am.Jur.2d Wills § 576 (1975). These statutes are in derogation of the general power to make a will and should be strictly construed. No exception should be extended to include a class not clearly comprehended in the statute. 79 Am.Jur.2d Wills § 576 (1975).
Section 732.301(2) simply and clearly says it is not applicable if the claiming spouse is "provided for in the will." It says nothing about the "gloss" superimposed by the lower court in this case  that this provision must have been made "in contemplation of marriage." The "contemplation of marriage" requirement originated as a part of the common law rule that a man's will would be revoked after marriage and the birth of a child, unless he made a provision in his will contemplating both events. Redfearn, Wills and Administration in Florida, § 8.10, (5th ed. 1977). Many statutes in other jurisdictions expressly retain the requirement that the provision be made in contemplation of marriage. Cases from those jurisdictions are not on point. See Annot., 97 A.L.R.2d 1026, § 3 (1964). There is no basis in Florida's pretermitted spouse statute to support the reinstatement of this common law rule.[3] Under a statute like section 732.301, a will which provides for the spouse is not revoked by the subsequent marriage of the testator, notwithstanding that there is no indication in the will or in the evidence that the testator contemplated marriage with such person when the will was made. Annot., 97 A.L.R.2d 1026, § 2[b] (1964). See In Re Livingston's Estate, 172 So.2d 619 (Fla.2d DCA 1965).
The trial court and the appellee rely upon In Re Steinert's Estate, 137 So.2d 856 (Fla.2d DCA 1962). That case held that even though the surviving spouse was left $30,000 in the will, the widow was entitled to an intestate share of the estate because "[n]o evidence was offered here to support the view that testator contemplated marriage to appellee at the time of the execution of his will ..." 137 So.2d at 858. However In Re Livingston's Estate, 172 So.2d 619 (Fla.2d DCA 1965), decided by the same court three years later, receded from that "gloss". It held that the surviving spouse has the burden of proving that the will failed to provide for him.
This exception, when analyzed, is evident upon the face of the will itself, at least to the extent that such will established, prima facie, that `such spouse is provided for in the will.' We therefore hold that where one marries after making a will, and the spouse survives the testator, and such will contains a provision for such survivor, such survivor would have the burden of alleging and proving that such will failed to provide for them as contemplated by F.S. § 731.10, F.S.A.
172 So.2d at 620. The widower in that case was bequeathed a 1961 Cadillac.
The dissent argues that a spouse may be effectively "disinherited" by failure to invoke the pretermitted spouse statute where a bequest is minimal or the will is made a long time prior to the parties' marriage. However, the Probate Code covers this situation by providing that if a surviving spouse is dissatisfied with the provision in the will made for him or for her, the widower or widow can take an "elective share"[4] of the estate. § 732.201, Fla. Stat. (1979). See In Re Suarez Estate, 145 Fla. 183, 198 So. 829 (1941). In this case, Frederic apparently did not apply for an elective share, and at the time that In Re Livingston's Estate was decided, the Florida *422 probate laws did not have a similar provision for widowers. Section 732.201, Florida Statutes (1979), which provides the right to an elective share, was created from former section 731.34 which provided for dower in realty and personalty. We must assume the Legislature was aware of section 732.201, Florida Statutes (1979) when it enacted section 731.10 as part of the "new" Probate Code.
The record clearly shows that Emma married after making her will; that Frederic survived her; and that there was a specific bequest[5] of bank accounts to Frederic in Emma's will. As stated in the Livingston case, the burden was on Frederic to prove that the will did not provide for him. He failed to carry this burden.
Based on the finding that the specific bequests had "lapsed", the trial court alternatively concluded that Emma's will failed to provide for Frederic. We do not need to reach the novel question of whether the ademption[6] of a specific bequest can invoke the operation of Florida's pretermitted spouse statute because the record does not show that an ademption occurred. Therefore, Frederic was provided for in the will.
There is a split of authority concerning whether or not the sale or disposition of property by a conservator or guardian during the testator's lifetime can ever cause an ademption.[7] The more equitable view is that a bequest will adeem if the use of the funds or property was necessary and duly required for the ward's care. Wilmerton v. Wilmerton, 176 F. 896 (7th Cir.1910), cert. denied, 217 U.S. 606, 54 L.Ed. 900, 30 S.Ct. 696 (1910); Annot., 51 A.L.R.2d 770, § 2(b) (1957). See In Re Estate of Watkins, 284 So.2d 679 (Fla. 1973). This rule is consistent with Florida's ademption statute:
If specifically devised property is sold by a guardian of the property for the care and maintenance of the ward or if a condemnation award or insurance proceeds are paid to a guardian of the property ... the specific devisee has the right to a general pecuniary devise equal to the net sale price, the condemnation award, or the insurance proceeds.[8]
The record fails to show that Frederic accounted for Emma's bank account funds or that he spent them for her care. A guardian, like a trustee, cannot spend a ward's funds as his own. He cannot withdraw funds from a ward's checking or savings account so as to defeat the ward's testamentary plan, unless the funds are needed to pay for the ward's care and support. Drozinski v. Straub, 383 So.2d 301 (Fla.2d DCA 1980). Further, where the guardian fails to file guardianship accountings and admits he treated the ward's funds as his own, he has the burden of proving he faithfully expended the funds. Beck v. Beck, 383 So.2d 268 (Fla.3d DCA 1980). Having failed to carry this burden, Frederic cannot now argue that misapplication of his ward's funds adeemed his own legacy.[9]Forbes v. Burket, 181 So.2d 682 (Fla.2d DCA 1966), on appeal after remand, 208 So.2d 670 (Fla.2d DCA 1968); Annot., 61 A.L.R.2d 449, § 17 (1958); Annot., 51 A.L.R.2d 770, § 5 (1957); 80 Am.Jur.2d Wills § 1713 (1975).
DAUKSCH, C.J., concurs.
FRANK D. UPCHURCH, Jr., J., dissents with opinion.
*423 FRANK D. UPCHURCH, Jr., Judge, dissenting:
I respectfully dissent. In Re Livingston's Estate, 172 So.2d 619 (Fla.2d DCA 1965) did not recede from the "gloss" requirement that to be "provided for in the will," the provision must be in contemplation of marriage. In Re Steinert's Estate, 137 So.2d 856 (Fla.2d DCA 1962).
The Livingston opinion cites Steinert without any attempt to distinguish or overrule the decision in that case. I conclude, therefore, that the court did not intend to recede from Steinert, and the decisions are compatible. The court in Livingston held:
We therefore hold that where one marries after making a will and the spouse survives the testator, and such will contains a provision for such survivor, such survivor would have the burden of alleging and proving that such will failed to provide for them as contemplated by F.S. 731.10 F.S.A. (Emphasis added.)
172 So.2d at 620.
Steinert had interpreted the "provided for the spouse" provision of section 731.10[1] as meaning "in contemplation of marriage." Therefore, it is clear that Livingston was concerned solely with who had the burden of proof, not what was necessary to be proved.
In Livingston, the testatrix left James Livingston a Cadillac automobile by will executed prior to their marriage but after they had become engaged. The trial court's order stated:
Such cases ... indicate that the burden of proof herein is upon the respondents [decedent's estate] to show the existence of at least one of the exceptions in order to defeat petitioner's claim herein as a pretermitted spouse.
The Second District Court of Appeal reversed for a new hearing at which the surviving husband, because the will contained a provision for him, would have the burden of alleging and proving that such will failed to provide for him as contemplated by section 731.10, Florida Statutes (1965), and as earlier interpreted by Steinert.
If the majority is correct and contemplation of marriage is not required, after reviewing the Livingston opinion one may ask, rhetorically, what was the surviving spouse required to prove? Was it that the Cadillac was not adequate provision, or that the bequest had lapsed?
Under the common law, the marriage of a man and the birth of a living child subsequent to the making of his will operated as a complete revocation unless provision was made in the will in contemplation of both events. Herzog v. Trust Co. of Eastern, 67 Fla. 54, 64 So. 426 (1914); Belton v. Summer, 31 Fla. 139, 12 So. 371 (1893). The marriage of a woman revoked her will even without the birth of issue. Colcord v. Conroy, 40 Fla. 97, 23 So. 561 (1898); 95 C.J.S. Wills § 291 (1957); Redfearn, Wills and Administration in Florida, § 8.10 (5th ed. 1977). These rules were not changed in Florida until the Probate Act of 1933. The language of the act as found in section 8(d), section 5477(4)(d), Comp.Gen.Law Supp. was essentially the same as now found in section 732.301, Florida Statutes (1977) with which we are now concerned.
The adoption of the Probate Act of 1933 was not a rejection of the common law rules but rather a codification of them. The common law had, by then, changed from the earlier rule which provided that marriage and the birth of a child or marriage alone in the case of a woman, after execution of a will resulted in revocation of the entire will. Easterlin v. Easterlin, 62 Fla. 468, 56 So. 688 (1911). The contemplation of marriage exception developed to avoid the unfairness to other beneficiaries where it was obvious the testator had executed his will with marriage to this particular spouse in mind. Belton v. Summer, 31 Fla. 139, 12 So. 371 (1893).
The purpose of the statute is to give effect to a will which reflects a testamentary intent that the will be effective even should the testator subsequently marry and *424 to protect the surviving spouse's right to inherit where such intent is not demonstrated.[2]
Most courts have rejected any inquiry into adequacy of a provision in a will. In interpreting a will, a court is not concerned with the amount of the testator's bounty. In Re Bridler's Estate, 165 Cal. App.2d 486, 331 P.2d 1028 (1958); In Re Brannon's Estate, 111 Cal. App. 38, 295 P. 83 (1931); Czepiel v. Czepiel, 146 Conn. 439, 151 A.2d 878 (1959).
The majority opinion overlooks a well known fact of life; that is, that good friends often marry. The circumstance that a person was sufficiently appreciated to be the recipient of a bequest in a will should not militate against his or her taking by intestacy when a person who was a stranger to the testator and therefore not included in the will can so elect. The inquiry of the court should be to determine whether the testator intended that the will should remain his will after his marriage. Therefore, the ultimate question is, did he contemplate marriage at the time he executed his will?
While it is true as the majority suggests, that section 732.201, Florida Statutes (1979) prevents a surviving spouse to whom a small bequest is given in the will from being "disinherited" because he or she may choose to take an elective share, this is small consolation to the spouse who would otherwise take the entire estate as would be the case where the decedent had no lineal descendants. § 732.102(1)(a), Fla. Stat. (1979).
Some courts, interpreting similar statutes, reason that if property is specifically devised or bequeathed to a person and that person and the testator subsequently marry, then the requirements of the statute are met because the will speaks as of time of death. In Re Appenfelder's Estate, 99 Cal. App. 330, 278 P. 473 (1929). Most courts, however, have rejected this reasoning as did the California Supreme Court in In Re Poisl's Estate, 44 Cal.2d 147, 280 P.2d 789 (1955). There the court pointed out that decisions applying the contrary rule gave no consideration to the underlying purpose and policy of the statute. The wording of the California statute is remarkably similar to section 732.301, Florida Statutes (1977).[3]
In the case before us, the trial court applied the correct burden of proof as enunciated in Livingston. In its order, the court said in paragraph four: "Said reference to petitioner was not made to him in the prospective status as the husband of the testatrix... ." There is substantial evidence to support this finding. There was no evidence to support the view that marriage was contemplated, and the court so found.
If Mr. Ganier were the pretermitted spouse and there is indeed a requirement that marriage be contemplated, it is not necessary to reach the question of whether the bequest under the will lapsed. If it is demonstrated that he misused funds in his trust as guardian, recovery can be had. I readily agree with the majority that he could not misappropriate his wife's property and then contend his bequest had lapsed because of that misappropriation.
The record reflects that Mr. Ganier was devious and greedy in dealing with his wife's funds. That fact should not persuade us to adopt an impractical rule of law which, in my opinion, is in direct conflict with established and respected precedent.
NOTES
[1] The petition for administration valued the assets of Emma's estate at less than $60,000.00.
[2] § 732.301(2), Fla. Stat. (1979).
[3] The adoption of the common law rule would pose interpretation problems of "how" the prospective spouse must be "contemplated." Must the spouse be mentioned in the will as "my intended" etc.? Can the intent to marry be shown by extrinsic facts or statements and if so, whose? Must the spouse's bequest be large enough to rank with what a spouse "should receive" in a court's opinion? The statute gives the courts no help because it is completely silent as to "contemplation." This suggests why it should not be read into the statute by judicial interpretation.
[4] The elective share is equal to 30 percent of the net estate assets. § 732.207, Fla. Stat. (1979).
[5] Redfearn, Wills and Administration in Florida § 12.07 (5th ed. 1977).
[6] "Ademption" is different than "lapse." A bequest "lapses" for various reasons, but primarily because the legatee predeceases the testator. Sorrels v. McNally, 89 Fla. 457, 105 So. 106 (1925); 80 Am.Jur.2d Wills § 1661 (1975). Bequests "adeem" when a specific bequest is sold, expended, or destroyed before the death of the testator. 80 Am.Jur.2d Wills §§ 1702; 1706 (1975); Redfearn, supra note 5, § 12.09.
[7] Annot., 61 A.L.R.2d § 16 (1958); Annot., 51 A.L.R.2d 770 §§ 3, 4 (1957).
[8] § 732.606(1), Fla. Stat. (1979).
[9] If the specific legatee and the guardian were different individuals, the specific legatee could recover the misapplied assets from the guardian, or pursue a damage claim against him. Only if that fails should the question of ademption arise. In this case no pursuit is needed since Frederic apparently received his specific bequest.
[1] Now section 732.301, Florida Statutes (1979).
[2] While many jurisdictions hold that this intent must appear from the will itself, Redfearn, Wills and Administration in Florida, § 8.10, the Livingston court apparently did not subscribe to this view because the will did not disclose any such intent but instead, the husband was given the burden of proving he was not provided for, which he could only do by parol evidence.
[3] California Probate Code § 70 provides:

If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless provision has been made for the spouse by marriage contract, or unless the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received.