In the Matter of the ESTATE OF Clyde L. CHRISTENSEN, Deceased.

v.

Virginia T. CHRISTENSEN, Appellant.

No. 17892.

Supreme Court of Utah.

Sept. 8, 1982.

David E. West, Frank Armstrong, Salt Lake City, for appellant.

David S. Geldzahler, John M. Bradley, Salt Lake City, for respondent.

OAKS, Justice:

Appellant, who married the 83-year-old testator six weeks before his death, contends that she is entitled to 50 percent of his $10 million estate as an "omitted spouse" under U.C.A., 1953, § 75–2–301. She claims the intestate share specified where "a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will...." The district court granted the executor's motion to dismiss appellant's petition on the ground that she was not an omitted spouse because she was provided for in the testator's will. (The court did not resolve the executor's challenge to the validity of the marriage.) We affirm that decision, but modify the court's judgment on a lesser issue.

Appellant and testator had occupied adjoining condominium units in Salt Lake City since 1966. According to her affidavit, she "cared and provided for him" and the two "had a close relationship." Testator executed his last will in 1976, leaving the bulk of his estate in trust for the benefit of his granddaughter.

In a codicil executed in 1977, the testator bequeathed 3,000 shares of Norton Company stock to appellant. In a second codicil, executed in 1979, he bequeathed 8,000 shares of this stock to appellant. The parties disagree whether the total bequest was for 8,000 shares or for 11,000 shares, but agree that the will, as modified by the codicils, gave appellant at least 8,000 shares, whose value at the date of death proved to be $436,000.

The testator married the appellant, Virginia Thompson, on October 14, 1980, in Elko, Nevada. The testator died November 26, 1980. He left an estate valued at over $10 million. His will was admitted to probate and the respondent bank was appointed executor on December 24, 1980. On that same date, the court declared testator's heirs to include "Virginia Thompson," whom the court described as a "Specific Legatee and Alleged Spouse."

Although appellant did not contest this order of the court, she later filed a petition praying, *inter alia,* for a determination that she was an omitted spouse under § 75–2–301, and for an order awarding her the proceeds of the sale of an automobile. The executor moved to dismiss the petition. Appellant filed a cross-motion for partial summary judgment. The district court dismissed the petition insofar as it related to both of appellant's contentions, and she took this appeal.

## I. FINAL JUDGMENT

A threshold question in this appeal is whether the order of the district court dis-

missing the petition of the "omitted spouse" is a final appealable order. We hold that it is.

■ An order admitting a will to probate in the course of formal testacy proceedings is a final order for purposes of appeal. U.C.A., 1953, § 75–3–412(1); *In re Estate of Decker,* 194 Colo. 143, 570 P.2d 832 (1977); New Topic Service Volume, Am. Jur.2d *Uniform Probate Code* § 56 (1974).

■ The order dismissing an omitted spouse's petition is similar in that it resolves an issue of vital importance and concludes a major phase in the process of formal testacy proceedings. Failure to allow an appeal from such an order could compel all subsequent proceedings, including partial distributions, to go forward under a cloud of uncertainty that would seriously impair the personal representative's efforts to administer the estate. The order is therefore final for purposes of appeal.

## II. PROVISION FOR SURVIVING SPOUSE

■ Section 75–2–301 of the Utah Probate Code, which is quoted in full in the footnote and which is identical to the corresponding section of the Uniform Probate Code,[1] has never been construed by this Court, and has rarely been construed in other jurisdictions. *See* annotations to Uniform Probate Code § 2–301, 8 U.L.A. 131 (Supp.1982). The section is obviously designed to avoid the unintentional disinheritance of the spouse of a decedent who executed a will prior to the marriage and neglected to revise it afterwards. According to the Editorial Board Comment, the section "reflects the view that the intestate share of the spouse is what the decedent would [have] want[ed] the spouse to have if he had thought about the relationship of his old will to the new situation."

1. If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will unless it appears from the will

that the omission was intentional or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

Appellant's contention that she is an "omitted spouse" for whom the testator "fail[ed] to provide by will," § 75–2–301, must be considered against the background of the common law and succeeding statutes. At common law, a man's will was revoked by his subsequent marriage and birth of issue. T. Atkinson, *Handbook of the Law of Wills* § 85 (2d ed. 1953). Later legislation in England and most states in this country provided that a man's will was revoked merely by marriage if his wife survived him and was not provided for by a marriage settlement or in the will or otherwise mentioned so as to negate an intention to revoke. *See* Bordwell, "The Statute Law of Wills," 14 Iowa L.Rev. 283, 298–301 (1929). Utah had such a statute from the earliest days of statehood until it was repealed by enactment of the Uniform Probate Code. Utah Rev.Stats., 1898, § 2754; U.C.A., 1953, §§ 74–1–24 and –25 (repealed). Although the Uniform Probate Code does not achieve its result by specifying revocation of the will, its requirement that an omitted spouse not provided for in the will receive the share he or she would have inherited by intestacy clearly reflects a familiar and long-standing feature of the law of wills.

Appellant contends that the testator's bequests of corporate stock in the 1977 and 1979 codicils do not constitute a "provi[sion] by will for his surviving spouse" that would preclude the applicability of § 75–2–301 because (1) they were not made in contemplation of her marriage to the testator, and (2) their value was too minimal in relation to the overall value of the estate.

(1) Some statutes in force when the Uniform Probate Code was drafted specified that in order to avoid the rule of revocation by marriage a provision for the surviving spouse must have been included in the will in contemplation of marriage. In other words, the will provision must have been executed in favor of the recipient in his or her capacity as a prospective spouse. Even where there was no such requirement in the statute, some cases have imposed that requirement, though others have not. *See generally* 2 W. Boyce & D. Parker, *Page on Wills* § 21.91 (1960); *Annot.,* 97 A.L.R.2d 1026 (1964); 79 Am.Jur.2d *Wills* §§ 582–583 (1975).

We are aware of no cases determining whether a will provision in favor of a surviving spouse can preclude the applicability of the "omitted spouse" provision in § 2–301 of the Uniform Probate Code (U.C.A., 1953, § 75–2–301) where the testamentary gift was not made in contemplation of marriage. Even though "contemplation of marriage" figured prominently in prior statutes and case law, the Uniform Probate Code makes no mention of that legal requirement. In a statute so carefully drafted, that omission must have been deliberate. We think it would therefore be inappropriate for the "contemplation of marriage" requirement to be re-engrafted by judicial decision. The interpretive problems entailed in applying that requirement to various testamentary dispositions, described in *Estate of Ganier,* Fla.App., 402 So.2d 418, 421 n. 3 (1981), confirm the wisdom of avoiding that requirement unless it is clearly imposed by statute. Here it is not.

We therefore reject appellant's first argument and hold that a testator can "provide by will for his surviving spouse" in such a way as to prevent the recipient from being an "omitted spouse" under § 75–2–301 even though the testamentary gift was not made in contemplation of marriage. This was the holding in a case that construed a statute with wording similar to this provision of the Uniform Probate Code. *Estate of Ganier, supra.* We find that reasoning persuasive of the same result in this case.

(2) Appellant contends that even if the testamentary gift need not be made in contemplation of marriage, by his bequest in this case the testator "fail[ed] to provide by will for his surviving spouse" within the meaning of § 75–2–301 because of the relatively minimal value of the bequest. Appellant argues that allowing a minimal bequest made years before marriage to effectively disinherit a spouse who would otherwise be entitled to an intestate share would

contradict the underlying purpose of the omitted spouse provision.

Section 75–2–301 is designed to effectuate, not to circumvent, the testator's intent.[2] Pursuant to that purpose, the section specifies the intestate share for the "omitted spouse" on the theory that it fairly approximates what the testator would have bequeathed if he had executed a will after the marriage. But that theory is inapplicable where the will contains any bequest to the spouse that is clearly made in contemplation of their marriage. As was well stated by a California court:

> The determinative fact is not the *size* of the gift to the contemplated spouse but the fact that the testator has made a *provision* affirmatively showing that he had the particular person in mind *as a contemplated spouse.*

*Estate of Bridler,* 165 Cal.App.2d 486, 488, 331 P.2d 1028, 1029 (1958). To grant an intestate share where the will contains a gift made in contemplation of marriage would contradict the testator's intent. In that circumstance, the omitted spouse provision in § 75–2–301 would be inapplicable, and the surviving spouse would be left to pursue other statutory remedies.

■ The more difficult circumstance— the one present in this case—is where the testamentary gift cannot be shown to have been made in contemplation of marriage. Here, the testator's intent cannot be dispositive on the treatment of the "omitted spouse" because it is equivocal: he may simply have neglected to amend his will after marriage, or he may have re-examined the will and decided that his previous testamentary gift would adequately provide for his new spouse. In such a case, the surviving spouse should be permitted to show that in the circumstances presented, including the provision of a particular testamentary gift, the testator "fail[ed] to provide by will for his surviving spouse" within the meaning of § 75–2–301. Among the considerations relevant to that factual con-

clusion are (1) the alternative takers under the will, (2) the dollar value of the testamentary gift to the surviving spouse, (3) the fraction of the estate represented by that gift, (4) whether comparable gifts were made to other persons, (5) the length of time between execution of the testamentary instrument and the marriage, (6) the duration of the marriage, (7) any *inter vivos* gifts the testator has made to the surviving spouse, and (8) the separate property and needs of the surviving spouse. For example, if a testator's will made token gifts to various friends, one of whom married the testator years later, the original gift is not likely to qualify as a "provi[sion] by will for his surviving spouse . . . ."

■ The burden of establishing that a particular testamentary gift did not "provide" for the surviving spouse for purposes of § 75–2–301 is on the surviving spouse. In order to satisfy that burden, the evidence must be sufficient to establish that the testamentary gift specified before the marriage could not reasonably represent this testator's effort "to provide by will for his surviving spouse." § 75–2–301.

■ In this case, the pending motions made it evident that both parties were willing to submit the issue on the undisputed facts before the district court. Though amounting to only four percent of the total value of the estate, appellant's $436,000 testamentary gift had a substantial dollar value, the marriage occurred a relatively short time after the codicils were executed, the marriage was extremely brief, and the record suggests that the testator made significant *inter vivos* gifts to appellant. Consequently, there was substantial support for the district court's conclusion that this was not a case where the testator had "fail[ed] to provide by will for his surviving spouse," and the omitted spouse provision in § 75–2–301 was therefore inapplicable. The dis-

---

**2.** Contrast § 75–2–201, which entitles a surviving spouse to an elective share contrary to the testator's intent.

missal of appellant's petition for relief as an omitted spouse is therefore affirmed.[3]

## III. PROCEEDS OF THE AUTOMOBILE

■ Appellant claims the proceeds of the sale of a Lincoln Continental automobile. The executor resists this claim on the grounds that appellant made no objection to the sale and the court confirmed it. The circumstances are set forth in the undisputed affidavit of appellant's counsel: In an attempt to locate the title certificate, the executor's trust officer telephoned appellant's counsel, who informed him that appellant claimed ownership of this automobile. The officer responded that he had a sale, but would not proceed in the face of any adverse claim. The two then agreed that appellant would not object to the sale, but would make claim to the proceeds rather than to the automobile itself. Apparently neither communicated this agreement to the executor's attorney. The court later granted the executor's petition for confirmation of sale of personal property, and the automobile was sold.

Appellant contends that the executor should be estopped from raising the order of the court as a defense to her claim. The executor counters that appellant's counsel acted improperly by communicating directly with an adverse party, rather than its counsel, and therefore cannot invoke the doctrine of estoppel in this circumstance. The executor's attorney claims prejudice in his being deprived of the opportunity to determine whether to conduct the sale forthwith or only after litigating the question of ownership to the automobile.

The circumstances of this case fit all the elements of equitable estoppel, as specified in *Triple I Supply, Inc. v. Sunset Rail, Inc.,* Utah, 652 P.2d 1298 (1982); *Rice v. Granite School District,* 23 Utah 2d 22, 456 P.2d 159 (1969); and *J.P. Koch, Inc. v. J.C. Penney Co.,* Utah, 534 P.2d 903, 905 (1975). Thus, in *Rice v. Granite School District, supra,* the

defendant was estopped to rely on the statute of limitations because its insurance carrier had induced the plaintiff to delay filing her action. Quoting approvingly from an earlier authority, we stated:

Where the delay in commencing an action is induced by the conduct of the defendant, ... it cannot be availed of ... as a defense.

One cannot justly or equitably lull an adversary into a false sense of security thereby subjecting his claim to the bar of limitations, and then be heard to plead that very delay as a defense to the action when brought.

23 Utah 2d at 28, 456 P.2d at 163. Similarly, in reasonable reliance upon an agreement with the executor, appellant refrained from challenging its petition for confirmation of the sale of the automobile. The executor is equitably estopped from later changing its position and asserting that appellant is barred by the court's order.

Appellant is not precluded from invoking equitable estoppel by her attorney's direct contact with the executor's trust officer. As appellant points out, the executor-bank is a sophisticated organization and its trust officer an experienced professional. The contact, which was initiated by the bank, was made in the course of the officer's routine duties. In addition, we perceive no prejudice resulting to the bank or its counsel from the sale of the automobile before, rather than after, the contest over its ownership.

The dismissal of appellant's claim to the proceeds of the automobile is therefore reversed, and this claim is remanded for further proceedings consistent with this opinion. In other respects, the dismissal of appellant's petition is affirmed. No costs awarded.

HALL, C.J., STEWART and HOWE, JJ., and J. DUFFY PALMER, District Judge, concur.

DURHAM, J., does not participate herein; PALMER, District Judge, sat.

---

3. In view of this disposition, it is unnecessary for us to discuss the remaining provisions of § 75–2–301 or other issues pertaining to the timeliness of appellant's petition, the penalty clause of the will, or the executor's capacity to attack the validity of the marriage.