In the Matter of the ESTATE OF Merlin R. MORRISON, Sr., deceased.

Kathleen KELLY; Edna Morrison; Jim Morrison; John Morrison; Merlin Morrison, Jr.; and Marjorie M. Stead, Plaintiffs and Appellants,

v.

WEST ONE TRUST COMPANY, Defendant and Appellee.

No. 960060–CA.

Court of Appeals of Utah.

Feb. 27, 1997.

Lowell V. Summerhays and J. Robert Latham, Murray, for Plaintiffs and Appellants.

Clark W. Sessions and Dean C. Andreasen, Salt Lake City, for Defendant and Appellee.

Before WILKINS, BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Kathleen Kelly, Edna Morrison, Jim Morrison, John Morrison, Merlin Morrison, Jr., and Marjorie M. Stead (the Morrisons) appeal a trial court order ruling that a previous distribution to the heirs of the estate of Merlin R. Morrison, Sr. (Morrison Sr.) was "improper" and that the heirs should return on a "pro rata basis" sufficient funds to satisfy claims against the estate. We affirm.

## BACKGROUND

This case involves an estate that has yet to close after almost fourteen years of infighting among Morrison family members and between certain of the Morrisons and West One, the personal representative. Upon his death, Morrison Sr. left four thousand shares of stock, which the estate later traded for a parcel of land at 905 South State Street in Salt Lake City (the Ninth South property). When the estate sold the Ninth South prop-

erty, it distributed the proceeds to the heirs under court order.

As a result of litigation that determined other properties were not estate assets, the Ninth South property proceeds became the only estate asset of any consequence. West One therefore requested that the trial court rule the prior distribution of those proceeds improper and order the heirs to return an amount necessary to cover "claims against the estate"—e.g., attorney fees and taxes. The Morrisons challenged that request, arguing the distributions were already "adjudicated" under Utah Code Ann. § 75-3-909 (1993), and, thus, the court could not later deem the distributions improper and order them returned to pay estate debts. The court ruled for West One. The Morrisons appeal.

## FINALITY OF ORDER

██ Attacking our jurisdiction over this appeal, West One presents the threshold question of whether the trial court's order is a final appealable order.[1] Under the final judgment rule, upon which Utah Rule of Appellate Procedure 3 is based, parties may not appeal judgments or orders that are not final.[2] *A.J. Mackay Co. v. Okland Constr. Co.*, 817 P.2d 323, 325 (Utah 1991). Generally, a final order " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Crosland v. Peck*, 738 P.2d 631, 632 (Utah 1987) (quoting *Olson v. Salt Lake City Sch. Dist.*, 724 P.2d 960, 964–65 (Utah 1986)). However, "[w]hether an order is deemed a 'final order' is not necessarily dependent in all instances upon whether all issues in a lawsuit have been adjudicated. The test to be applied is a pragmatic test." *First of Denver Mortgage Investors v. C.N. Zundel & Assocs.*, 600 P.2d 521, 528 (Utah 1979).

Utah has effectively adopted this pragmatic, case-by-case approach to finality in pro-

---

1. "[A] lack of jurisdiction can be raised at any time by either party or by the court." *Olson v. Salt Lake City Sch. Dist.*, 724 P.2d 960, 964 (Utah 1986).

2. Appellants here have not tried to use either of the two exceptions to the final judgment rule. Those exceptions allow a party to request the

trial court to certify an order for appeal under Utah Rule of Civil Procedure 54(b) or to request the appellate court to permit the appeal of an interlocutory order under Utah Rule of Appellate Procedure 5. *A.J. Mackay Co. v. Okland Constr. Co.*, 817 P.2d 323, 325 (Utah 1991).

bate matters.[3] For instance, in *In re Estate of Christensen*, 655 P.2d 646 (Utah 1982), the Utah Supreme Court held an order dismissing an "omitted spouse" petition to be a final appealable order. *Id.* at 648. The court reasoned that the order "resolve[d] an issue of vital importance" and "conclude[d] a major phase in the process of formal testacy proceedings." *Id.* The court further noted that "[f]ailure to allow an appeal from such an order could compel all subsequent proceedings, including partial distributions, to go forward under a cloud of uncertainty that would seriously impair the personal representative's efforts to administer the estate." *Id.*

Similarly, the supreme court has also held that an order compelling a decedent's widow to transfer land to the estate was final although the trial court retained continuing jurisdiction over other estate matters. *In re Estate of Voorhees*, 12 Utah 2d 361, 366, 366 P.2d 977, 980 (1961). The court premised its holding on the fact that the order decided "the real issue" in the case and "did not leave open for reconsideration the question as to who owned that property." *Id.* The court concluded that "[t]here was nothing further to be decided on that particular issue." *Id.*

Finally, in *In re Tasanen's Estate*, 25 Utah 396, 71 P. 984 (1903), the supreme court determined a decree denying a party's petition to set aside the estate administrator's appointment was final because "[t]here was nothing further to be done in th[at] matter." *Id.* at 986. None of the above cases required that the estate be closed before appeals from various orders could be considered.

■ The order before us compels the heirs of Morrison Sr.'s estate to return at least a portion of the distributions they have received. Consequently, it is characteristic of the orders deemed final in the above cases. The order here resolves "an issue of vital importance," *Christensen*, 655 P.2d at 648. But for their opportunity to appeal this particular order, the heirs would unquestionably

have to refund their monetary distributions, and that money would be paid to attorneys, taxing authorities, and the personal representative. *See First of Denver*, 600 P.2d at 528. However, if the personal representative were to be denied access to the prior distributions because of this appeal, the case would effectively end because no money would be available to pay claims against the estate or administrative expenses—the only remaining business in this case, according to the record.

Further, appellate review of the order at this stage removes the "cloud of uncertainty," *Christensen*, 655 P.2d at 648, that would otherwise envelop the repayment of distributions. West One will be able to administer the remainder of the estate with the assurance that its financial arrangements to close the estate will not be for naught—to be undone by an appellate court sometime in the future.

Finally, the trial court's order shows the issue of repayment of previous distributions was not to be further considered. *See Voorhees*, 366 P.2d at 980; *Tasanen*, 71 P. at 985–86. After the trial court ordered the repayment, the next line of the order summarily instructed West One to use the court's resolution of that issue and other financial matters to close the estate. In short, this order meets the test stated for final judgments in probate matters: "[I]t affects with finality the rights of the parties in th[is] subject matter." *In re Estate of Humphrey*, 107 Mich.App. 778, 309 N.W.2d 722, 724 (1981). We therefore have jurisdiction over this case.

## NONPRESERVATION OF ISSUES FOR APPEAL

■ Although we have jurisdiction, we decline to consider any of the issues raised by the Morrisons because those issues were not preserved before the trial court. The Morrisons' reply memorandum on the issues of claim priorities and the sufficiency of assets

---

3. Other states use this approach as well. *See, e.g., In re Estate of Binford*, 839 P.2d 508, 510 (Colo.Ct.App.1992) (stating finality determinations in probate cases are "made on a case-by-case basis"); *In re Estate of Humphrey*, 107

Mich.App. 778, 309 N.W.2d 722, 724 (1981) ("The finality of each ruling ... in the probate court order must be considered individually and can be determined only by an examination of the effect on the rights of the parties involved.").

to pay claims and expenses is the only place in the record where the Morrisons argued against returning a portion of the distributions the heirs received. Their only argument before the trial court was that the distributions were already "adjudicated" under Utah Code Ann. § 75–3–909 (1993) and, thus, the distributions could not later be deemed improper and ordered returned.

The Morrisons' arguments to this court, however, do not include the prior adjudication analysis and instead introduce four entirely new arguments: (1) The Ninth South property was owned in joint tenancy by Morrison Sr. and Morrison Jr., and thus passed automatically to Morrison Jr., leaving the proceeds out of the estate's reach;[4] (2) Utah Code Ann. § 75–3–1006 (1993) bars recovery of improperly distributed property past the time period involved here; (3) the sale of the Ninth South property is void if the distributions are partially recovered because full distribution was a condition of sale;[5] and (4) the law of the case doctrine requires reversal. Because the trial court had no opportunity to consider these arguments, we decline to address them. *See Broberg v. Hess,* 782 P.2d 198, 201 (Utah.Ct.App.1989) ("When there is no indication in the record on appeal that the trial court reached or ruled on an issue, this court will not undertake to consider the issue on appeal."). Accordingly, we affirm.

WILKINS, Associate P.J., and BILLINGS, J., concur.

---

4. The Morrisons conceded in oral argument that this argument is groundless because the Ninth South property was never held in joint tenancy by Morrison Sr. and Morrison Jr.

5. West One pointed out the Morrisons' failure to preserve this argument. In their reply brief, though, the Morrisons contend they did preserve this argument by raising it "during oral argument on the motion." However, we have no record that there was oral argument on that particular motion. And, even if there was oral argument, we have no transcript of the hearing. Thus, we have no record that this argument was preserved.