The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 23, 2019

**2019COA82**

**No. 18CA0541, *Estate of King* — Probate — Premarital Will — Entitlement of Spouse — Omitted Spouse Statute**

In this probate proceeding, a division of the court of appeals considers whether a surviving spouse is precluded from claiming a portion of a decedent's estate under section 15-11-301(1)(c), C.R.S. 2018, of the omitted spouse statute.  The division concludes that the language of section 15-11-301(1)(c) grants the lower court the authority to reasonably infer the decedent's intent when sufficient evidence is produced by the proponents of the will that the surviving spouse has been provided for.  In this case, the division concludes that the lower court properly inferred the decedent's intent to provide for his surviving spouse outside his will based on, among other factors, transfers totaling $4,052,000.00.

Court of Appeals No. 18CA0541
Arapahoe County District Court No. 16PR30695
Honorable H. Clay Hurst, Magistrate

_____

In re the Estate of Mark M. King, deceased.

Julie M. King,

Appellant,

v.

Carylyn K. Bell, as Personal Representative of the Estate of Mark M. King;
Michael McCandish King; and Colton McCandish King,

Appellees.

_____

ORDER AFFIRMED

Division III
Opinion by JUDGE ROMÁN
Webb and Freyre, JJ., concur

Announced May 23, 2019

_____

Jones & Keller, P.C., G. Stephen Long, Denver, Colorado, for Appellant

Springer and Steinberg, P.C., Jeffrey A. Springer, Craig L. Pankratz, Denver
Colorado, for Appellee Carylyn K. Bell

Brownstein Hyatt Farber Schreck, LLP, Carrie E. Johnson, Denver, Colorado,
for Appellees Michael McCandish King and Colton McCandish King

¶ 1     This appeal presents a probate question of first impression in Colorado: Does the omitted spouse statute, section 15-11-301(1)(c), C.R.S. 2018, preclude a surviving spouse from claiming an intestate share of the decedent's estate where the decedent did not mention the surviving spouse of ten months in his will but did leave her $4,000,000 in life insurance proceeds and $52,000 in joint bank accounts?  Applying section 15-11-301, we conclude that the answer is yes.  Therefore, we affirm.

## I.     Background

¶ 2     Julie M. King (surviving spouse) filed a "Petition for an Omitted Spouse Share," contending that she was unintentionally disinherited from the estate of Mark M. King (decedent) and, therefore, entitled to "$163,000.00 (indexed for inflation) . . . plus 50% of the balance of the estate."  The personal representative, decedent's sister Carylyn K. Bell, and decedent's children, Michael McCandish King and Colton McCandish King (collectively, the estate), opposed the petition, arguing that surviving spouse's omission was intentional because decedent provided for her outside

of the will — namely, through $4,462,806 she received in life insurance proceeds and joint bank accounts.[1]

¶ 3　　The magistrate held an evidentiary hearing. Following the hearing, the magistrate entered a written order regarding the Petition for an Omitted Spouse Share. The magistrate found the following.

¶ 4　　Decedent established his estate plan in 2000. In doing so, he created a pourover will and the Mark M. King Revocable Trust. Decedent also executed three codicils to the will and amended the trust three times.

¶ 5　　In May 2015, decedent and his first wife divorced. Decedent and surviving spouse began dating, and by July 2015 decedent regarded surviving spouse as his "partner." On July 27, 2015, decedent obtained a $5,000,000 life insurance policy and designated surviving spouse, then known as Julie Pelletier, to

---

[1] The estate also argued that decedent's retirement plans, which went to surviving spouse, totaling $410,806, were a transfer that should be included as proof that surviving spouse's omission was intentional. Because the magistrate's order, as will be seen, did not include the retirement plans in its ultimate conclusion, neither do we.

2

receive $4,000,000 of the policy and another friend, Jana Olsen, to receive the other $1,000,000.

¶ 6 Decedent and surviving spouse married six weeks later, on September 16, 2015. Decedent did not amend his will or trust documents.

¶ 7 But, eight months later, on May 19, 2016, decedent did amend the $4,000,000 life insurance policy to reflect his new spouse. Specifically, he wrote to the Northwestern Mutual Insurance Company about amending the life insurance policy:

> I just looked at insurance summary and it was not clear that my Wife Julie Michelle King is the beneficiary of the $4mm of the $5mmm policy. First it shows her maiden name of Pelletier but second does not specify her allocation of 80% of the policy. Can you please correct her name change and send a policy that provides that she is beneficiary, Thanks Mark King.

Decedent passed away two months later.

¶ 8 In addition to the $4,000,000 life insurance policy, surviving spouse received about $52,000 contained in joint bank accounts

and $410,806 from decedent's retirement plans.[2]  In total, surviving spouse received $4,462,806.  Conversely, according to decedent's will, eighty-five percent of decedent's estate poured into the Mark M. King Revocable Trust for his children and fifteen percent went to other family members and charity.[3]

¶ 9     Based on these findings, the magistrate concluded that surviving spouse was not an omitted spouse.  This appeal followed.  *See* C.R.M. 7(b).

---

[2] The magistrate's order stated that "[n]otwithstanding the fact that [surviving spouse] received the retirement funds in the amount of $410,806.00," the amount of money surviving spouse received was "substantial."  It is unclear to us whether the magistrate made a determination as to whether this money constituted a "transfer" for purposes of section 15-11-301(1)(c), C.R.S. 2018, or simply chose not to use it within his calculations of the amount surviving spouse received.  In the end, as will be discussed, regardless of whether the retirement plan amount was considered a transfer by the magistrate, his findings rested on a permissible inference based on the life insurance transfer and the value of the joint bank accounts.
[3] The parties dispute the net value of decedent's estate, but the magistrate did not make a finding of the value.  Like the magistrate, we do not decide the net value of the estate because, as will be discussed, the net value of the estate is not dispositive of the question before us.

## II. Entitlement of Surviving Spouse: Effect of Premarital Will

### A. Standard of Review

¶ 10    We review a judgment entered after a trial to the court as a mixed question of fact and law. *Jehly v. Brown*, 2014 COA 39, ¶ 8. "We defer to the court's credibility determinations and will disturb its findings of fact only if they are clearly erroneous and not supported by the record. . . . We review de novo the court's application of the governing legal standards." *Id.* (quoting *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008)).

¶ 11    In addition, we interpret statutes de novo. *Sandstead-Corona v. Sandstead*, 2018 CO 26, ¶ 38. In construing a statute, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22. If the statutory language is clear, we apply it as written with the goal of effectuating the legislature's intent. *Sandstead-Corona*, ¶ 39; *see St. Vrain Valley Sch. Dist. RE-1J v. Loveland*, 2017 CO 54, ¶ 11.

B.     Section 15-11-301 of the Colorado Probate Code

¶ 12     The omitted spouse statute — section 15-11-301 — of the Colorado Probate Code is designed to protect the testator's surviving spouse against unintentional disinheritance resulting from a premarital will.  The statute reads in part:

> If a testator's surviving spouse married the testator after the testator executed his or her will, the surviving spouse is entitled to receive, as an intestate share, no less than the value of the share of the estate he or she would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised outright to nor in trust for the benefit of a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is so devised to a descendant of such a child, or passes under section 15-11-603 or 15-11-604 to such a child or to a descendant of such a child . . . .

§ 15-11-301(1).

¶ 13     Because the protection afforded by the omitted spouse statute relates only to unintentional disinheritance, the statute does not apply if:

> (a) It appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;

(b) The will expresses the intention that it is to be effective notwithstanding any subsequent marriage; or

(c) The testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.

§ 15-11-301(1).

¶ 14    If any of these three exceptions apply, the surviving spouse is not entitled to an omitted spouse share of the testator's estate. Conversely, if none of the exceptions apply, the surviving spouse shall receive an omitted share of the testator's estate.  § 15-11-301.

C.  Intent That Transfer be in Lieu of a Testamentary Provision

¶ 15    In Colorado, intent that a transfer was in lieu of a testamentary provision may be (1) shown by the testator's statements; (2) reasonably inferred from the amount of the transfer; or (3) reasonably inferred from other evidence.  § 15-11-301(1)(c). In this case, the magistrate did not accept any evidence of decedent's statements.  However, the parties dispute whether the magistrate could reasonably infer the intent of the decedent from the amount of the transfer and whether there exists other evidence

7

of the decedent's intent. Because no Colorado case has interpreted Colorado's omitted spouse statute, we look to decisions from other states that, like Colorado, have adopted versions of Uniform Probate Code section 2-301. *See, e.g.*, *In re Estate of Becker*, 32 P.3d 557, 563 (Colo. App. 2000) (examining other jurisdictions' interpretation of the Uniform Probate Code to determine revocation by divorce). Indeed, section 15-11-301 of the Colorado Probate Code is identical to the corresponding section 2-301 of the Uniform Probate Code. Unif. Probate Code § 2-301 (Unif. Law Comm'n 1969) (amended 2010).

¶ 16    When determining whether a transfer was intended to be in lieu of a testamentary provision, courts in other jurisdictions have concluded that the important inquiry is not the form in which the transfer was made, or when the transfer occurred, but rather whether the transfer was so minimal and made in such a way that it appears the testator failed to provide for his surviving spouse. *In re Estate of Keeven*, 716 P.2d 1224, 1230 (Idaho 1986); *Estate of Christensen v. Christensen*, 655 P.2d 646, 650 (Utah 1982).

¶ 17    In *Estate of Christensen*, the testator's premarital will left the bulk of his estate in trust for his granddaughter while his surviving

8

spouse received the value of corporate stock — a devise left to her, in the will, before they were married. As part of its analysis, the Utah Supreme Court established several factors to consider in determining whether the testator intentionally provided for a surviving spouse by transfer outside of the will:

> (1) the alternative takers under the will, (2) the dollar value of the testamentary gift to the surviving spouse, (3) the fraction of the estate represented by that gift, (4) whether comparable gifts were made to other persons, (5) the length of time between execution of the testamentary instrument and the marriage, (6) the duration of the marriage, (7) any *inter vivos* gifts the testator has made to the surviving spouse, and (8) the separate property and needs of the surviving spouse.

*Estate of Christensen*, 655 P.2d at 650; *accord Estate of Keeven*, 716 P.2d at 1230-31.

¶ 18 Although *Estate of Christensen* is factually different from this case because, there, the transfer occurred within the premarital will of the testator, we nevertheless find those factors helpful to our analysis. Indeed, Utah's omitted spouse statute — Utah Code Annotated section 75-2-301 (West 2018) — is identical to Colorado

Revised Statutes section 15-11-301.[4]  Accordingly, we adopt the factors articulated in *Estate of Christensen* and hold that, to determine whether an omitted spouse is entitled to an intestate share of an estate when a proponent of the will argues the exception under section 15-11-301(1)(c) applies, the court should examine the transfer in light of these factors, to the extent they are addressed by the evidence.  To these factors, we add two additional points.

¶ 19     First, the plain language of section 15-11-301 makes no distinction between a transfer made to a future spouse in contemplation of marriage and a transfer made to a future spouse as a friend or in some other capacity.  Rather, the statute requires a failure by the testator to provide for a surviving spouse in *any* capacity.

¶ 20     Second, the amount of the transfer may be considered in isolation or in relation to the total net probate estate.  This is especially appropriate in Colorado, where intent can be reasonably

---

[4] Utah and Colorado both adopted the original Uniform Probate Code and subsequently adopted its revisions.  Although the *Estate of Christensen* court considered the original Uniform Probate Code, the language at issue in both *Estate of Christensen* and this case did not change with the revisions, but was merely re-codified.

inferred from the amount of the transfer. *See* § 15-11-301(1)(c); *see also In re Estate of Taggart*, 619 P.2d 562, 569-70 (N.M. Ct. App. 1980) (evidence supported a conclusion that the decedent's intent was to provide for the surviving spouse by creation of joint accounts and a retirement plan); *In re Estate of Knudsen*, 342 N.W. 2d 387, 391 (N.D. 1984) (life insurance benefits and joint tenancy arrangements can constitute "transfers" for the purposes of the omitted spouse statute); *In re Timmerman*, 502 S.E.2d 920 (S.C. Ct. App. 1998) (making no indication of the total value of the testator's estate where the transfers to spouse totaled $1,191,000); *Estate of Christensen*, 655 P.2d at 650 (the surviving spouse's gift, which only constituted four percent of the total value of the estate, was nevertheless a substantial dollar value considering the short marriage).

¶ 21     We now apply these principles to the facts of the present case.

D.     Application

¶ 22     Surviving spouse first argues that the magistrate impermissibly shifted the burden of proof to her by requiring her to show that the "substantial" amount that she received was not

11

intentionally transferred in lieu of a testamentary provision. We apply the following burden-shifting test.

¶ 23    First the surviving spouse is required to prove that he or she is a spouse of the decedent and does not appear in the testamentary documents. *See* § 15-11-301(1).

¶ 24    Second, after the surviving spouse proves that he or she falls under section 15-11-301(1), the burden shifts to the proponent(s) of the will to establish that one of the exceptions set forth in section 15-11-301(1)(a)-(c) applies. Unif. Probate Code § 2-301 cmt.; *see In re Estate of Beaman*, 583 P.2d 270, 274 (Ariz. Ct. App. 1978); *Estate of Christensen*, 655 P.2d at 650.

¶ 25    Third, if the proponents of the will have satisfied their burden, the surviving spouse may present rebuttal evidence that he or she was not provided for by those transfers. The evidence must be sufficient to establish that the transfer could not reasonably represent the testator's effort to provide for his or her spouse in lieu of a testamentary provision. *Estate of Christensen*, 655 P.2d at 650.

¶ 26    Here, surviving spouse demonstrated that she was not provided for in the will. The burden then shifted to the estate (the proponents of the will) to present evidence that surviving spouse

was provided for by transfers she received outside of the will, which it did through evidence of life insurance, joint accounts, and retirement plan transfers. Surviving spouse then sought to rebut this evidence by arguing that there was no evidence that decedent intended those transfers to be in lieu of a testamentary provision.

¶ 27    After considering the evidence, the magistrate concluded that

> the amount of life insurance specifically created and designated for [surviving spouse] along with the jointly owned checking account(s) collectively totaling $4,052,000.00 was a substantial monetary transfer that Decedent intended at that time be provide[d] to his new spouse outside of his pre-marital estate plan convincing this court that [surviving spouse] was not an omitted spouse.

¶ 28    Applying the test we announce today, we conclude that the record supports the magistrate's determination that surviving spouse was not an omitted spouse under section 15-11-301. Specifically, the $4,000,000 life insurance transfer to surviving spouse provided six weeks before marriage and later ratified after marriage supports the permissible inference that decedent intended the transfer to provide for surviving spouse in lieu of a testamentary disposition. *See Estate of Christensen*, 655 P.2d at 650 (including "the dollar value of the testamentary gift to the surviving spouse"

13

and "the duration of the marriage" as relevant factors to determine whether a transfer was provided in lieu of a testamentary provision); *see also Estate of Taggart,* 619 P.2d at 569 (considering the "not insignificant amount" transferred to the surviving spouse as evidence of intent to transfer in lieu of a testamentary provision).

¶ 29 This is so even though the life insurance transfer designation was made before decedent and surviving spouse's marriage. *Estate of Beaman,* 583 P.2d at 274 ("The section is designed to guard against unintentional disinheritance. It does not apply if the will states an intent to make no provision for a later spouse. Nor does it apply if before or after the marriage the testator makes some other provision for the spouse (a living trust, joint tenancy with right of survivorship, annuity, outright gift, or life insurance payable to the spouse) if this other provision was to take the place of a provision by will. The statute makes 'statements of the testator' admissible to show intent, but also permits other evidence to establish this.") (citation omitted).

¶ 30 In addition, applying section 15-11-301(1)(c), we conclude that "other evidence" in the record supports the magistrate's findings:

1. Decedent first executed his will in 2000 and then executed codicils on three separate occasions modifying the existing will to account for changes in life circumstances. Thus, decedent knew how to amend his will but did not do so after he married surviving spouse.

2. After the marriage, decedent re-designated surviving spouse — as his spouse, whereas she had been designated as his "partner" before — as the beneficiary of a life insurance policy in the amount of $4,000,000.

3. The amount of this transfer was not minimal and presents the kind of "other evidence" contemplated in the statute to show intent.

4. Decedent and surviving spouse were married for a short period of time — ten months.

5. Surviving spouse received an additional $52,000 in transfers from joint accounts (not to mention decedent's retirement plans outside of the will) in addition to the life insurance proceeds. *See Estate of Taggart,* 619 P.2d at 569-70; *In re Estate of Frandson,* 356 N.W.2d 125, 128 (N.D. 1984).

15

¶ 31    For these reasons, we find no error in the magistrate's findings that surviving spouse is not an omitted spouse under section 15-11-301.

¶ 32    In light of this disposition, we do not reach what share of the estate surviving spouse would have been entitled to had she fallen under section 15-11-301.

### III.   Conclusion

¶ 33    The magistrate's order is affirmed.

JUDGE WEBB and JUDGE FREYRE concur.

16