*In re* HERBACH ESTATE

HERBACH v HERBACH

Docket No. 199167. Submitted February 11, 1998, at Detroit. Decided June
    9, 1998, at 9:10 A.M. Leave to appeal sought.

Walter Herbach died on January 25, 1995, and Barry Herbach, his son,
    who was named personal representative of Walter's estate in a will
    executed in March 1982, commenced probate proceedings in the
    Oakland County Probate Court in February 1995. In the will, Walter
    devised $50,000 to Eileen Chudler, as a "friend." Eileen and Walter
    were married in April 1983 and remained married until Walter's
    death. In July 1995, Eileen Herbach filed a petition seeking a family
    allowance. Five days later, the respondent personal representative
    notified the petitioner of her right to request a family allowance
    and of her right to make an election under MCL 700.282; MSA
    27.5282. In July 1995, the probate court, Sandra G. Silver, J.,
    awarded the petitioner a prospective family allowance for an
    uncertain duration. In February 1996, the probate court ordered
    that any family allowance payments made after January 25, 1996,
    would be charged as advancements against the petitioner's interest
    in the estate. In March 1996, the probate court denied the peti-
    tioner's request for retroactive nonchargeable family allowance
    payments for the five months immediately following Walter's death.
    The petitioner notified the probate court within the statutory
    period for making her election under § 282 that she intended to
    take her statutory share of the estate rather than abide by the
    terms of the will. The petitioner also sought a share of the estate as
    a pretermitted spouse under MCL 700.126; MSA 27.5126. The pro-
    bate court ruled that the petitioner could take as a pretermitted
    spouse if she was named in the will, as long as she was not named
    in the will in contemplation of marriage. That issue was set for trial
    along with the issue whether Walter transferred assets to the peti-
    tioner outside the will in lieu of a testamentary disposition. A jury
    determined that Walter did not contemplate marriage to the peti-
    tioner when he executed his will, that Walter provided for the peti-
    tioner by transfers outside the will, and that the transfers were
    made in lieu of a testamentary disposition. The probate court ruled
    that the petitioner was not entitled to take as a pretermitted

spouse. After the trial, the probate court granted the respondent's motion for reimbursement from the petitioner of the family allowance paid after January 25, 1996, agreed with the respondent's claim that the nontestamentary transfer to the petitioner reduced the value of her elective share to zero, denied the petitioner's request to withdraw her election of the statutory spouse's share, and ruled that the petitioner was not entitled to any amount of the estate pursuant to her election. The petitioner appealed.

The Court of Appeals *held*:

1. The petitioner is precluded as a matter of law from taking as a pretermitted spouse because she was named in the will. Under the plain language of § 126, the petitioner is not eligible to take a share as an omitted spouse because she was not left out of or unmentioned in the will. The statute makes no distinction between a devise made to a future spouse in contemplation of marriage and a devise made to a future spouse as a friend or in a different capacity. The statute simply requires a failure by the testator to provide for a surviving spouse in any capacity in order for the surviving spouse to be a pretermitted spouse. The petitioner was not entitled to a trial regarding her right to take as a pretermitted spouse.

2. The petitioner was entitled pursuant to MCL 700.287; MSA 27.5287 to receive one full year of nonchargeable family allowance payments from the time of the testator's death. The probate court erred in failing to grant the petitioner's request for retroactive payments for the five months immediately following her husband's death. The probate court's order must be reversed and the matter must be remanded for an order directing the respondent to pay the petitioner a reasonable family allowance for those five months.

3. The probate court did not err in denying the petitioner's request to withdraw her election of the statutory spouse's share and to take under the will instead. A surviving spouse generally should not be permitted to withdraw an election where the statutory period for making the election has passed.

Affirmed in part, reversed in part, and remanded.

1. APPEAL — GROUNDS FOR AFFIRMANCE — CROSS APPEALS.

A party that has not sought to cross appeal cannot obtain a decision on appeal more favorable than that rendered by the lower court; a cross appeal is not necessary to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court.

2. WILLS — PRETERMITTED SPOUSES.

The pretermitted spouse statute makes no distinction between a devise made to a future spouse in contemplation of marriage and

one made to a future spouse as a friend or in a different capacity; the statute simply requires a failure by the testator to provide in a will for a surviving spouse in any capacity in order for the surviving spouse to be considered a pretermitted spouse (MCL 700.126; MSA 27.5126).

3. WILLS — FAMILY ALLOWANCE PAYMENTS — RETROACTIVE GRANT OF PAYMENTS.

The family allowance statute provides that a nonchargeable family allowance shall be granted for one full year upon petition to the probate court following a testator's death; the statute does not preclude a retroactive grant of such payments for the period between the time of the death and the time of the filing of the petition where the total nonchargeable allowance is for one year (MCL 700.287; MSA 27.5287).

4. WILLS — SPOUSE'S ELECTION — WITHDRAWAL OF ELECTIONS.

The spouse's election statute provides that a surviving spouse of a decedent domiciled in Michigan who dies testate may elect to either abide by the terms of the will or take a portion of the share that would have passed to the surviving spouse had the decedent died intestate; the surviving spouse must make the election within sixty days after the date for presentment of claims or within sixty days after the filing of the proof of service of the inventory upon the surviving spouse, whichever is later; a surviving spouse generally should not be permitted to withdraw an election after the statutory period for making the election has passed (MCL 700.282; MSA 27.5282).

*Bassey and Selesko, P.C.* (by *Robert C. Zack* and *Mark Merlanti*), for the petitioner.

*Shulman and Kolin, PLC* (by *Marjorie L. Kolin* and *Leonard B. Shulman*), for the respondent.

Before: DOCTOROFF, P.J., and REILLY and G. S. ALLEN*, JJ.

REILLY, J. Petitioner Eileen Herbach appeals as of right from a probate court judgment denying her claim to take as a pretermitted spouse, ruling that she

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

was not entitled to take any amount of the estate of Walter B. Herbach, deceased, pursuant to an elective share, ordering her to reimburse respondent Barry Herbach, personal representative of the decedent's estate, for certain family allowance payments made to her by the estate, and ordering her to pay $700 in costs and attorney fees. We affirm in part, reverse in part, and remand.

The testator, Walter Herbach, executed his last will and testament on March 13, 1982. In his will he devised $50,000 to petitioner, as a "friend." Petitioner and the testator were married in April 1983 and remained married until the testator's death on January 25, 1995. The testator's son, respondent Barry Herbach, was named as the personal representative of the testator's estate and probate proceedings were commenced in February 1995.

On June 15, 1995, petitioner filed a petition with the probate court seeking a family allowance. See MCL 700.287; MSA 27.5287.[1] Five days later, respondent

---

[1] The family allowance statute provides:

(1) In addition to the right to homestead allowance and exempt property, the surviving spouse of a decedent who was domiciled in this state and minor children of a decedent whom the decedent is legally obliged to support are entitled to a reasonable family allowance out of the estate for their maintenance during the progress of the settlement of the estate according to their circumstances but never for a longer period than until their shares to the estate shall be assigned to them nor for more than 1 year after the death of the decedent in an insolvent estate. On showing of necessity, the allowances may be continued from time to time in a solvent estate beyond the year, but the allowances beyond the year shall be charged as advancements from the estate against the interest of the spouse or against the interests of the minor children, as the case may be. The allowance shall be granted upon petition to the court and after notice as provided by supreme court rule. The allowance is payable to the surviving spouse for the use of the surviving spouse and minor children; otherwise to the minor children, their

notified petitioner of her right to request a family allowance and of her right to make an election under MCL 700.282; MSA 27.5282.[2] Petitioner sought a nonchargeable family allowance for a period of one

---

fiduciaries, or other persons having their care and custody. If a minor child is not living with the surviving spouse, the allowance may be made to the minor child or to the fiduciary or other person having care and custody of the minor child, as his or her needs may appear. The family allowance paid for the 1 year is exempt from and has priority over all claims and is not charged against any benefit or share passing to the surviving spouse or minor children by the will of the decedent, by intestate succession, or otherwise.

(2) Notice of hearing on a petition for allowance for the support of a spouse or minor children shall be personally served upon the personal representative of the estate of the decedent at least 5 days before the hearing on the petition, unless the personal representative appears in court or in writing waives the notice. If the spouse is the personal representative, notice of hearing on the petition shall be given to interested parties as provided by supreme court rule. [MCL 700.287; MSA 27.5287.]

[2] The spouse's election statute provides:

(1) If a decedent who was domiciled in this state dies testate leaving a surviving spouse, the fiduciary appointed to represent the estate, before the date for presentment of claims, shall serve notice on the surviving spouse of the spouse's right to an election as provided by this section and to file with the court an election in writing that the spouse elects 1 of the following:

(a) That the spouse will abide by the terms of the will.

(b) That the spouse will take ½ of the sum or share that would have passed to the spouse had the testator died intestate, reduced by ½ of the value of all property derived by the spouse from the decedent by any means other than testate or intestate succession upon the decedent's death.

(c) If a widow, that the spouse will take her dower right under sections 1 to 29 of chapter 66 of the revised statutes of 1846, as amended.

(2) The surviving spouse shall be entitled to only 1 election choice under subsection (1) unless the contrary plainly appears by the will to be intended by the testator. The right of election of the surviving spouse may be exercised only during the lifetime of the surviving spouse. The election shall be made within 60 days after the date for presentment of claims, or within 60 days after filing proof of service of the inventory upon the surviving spouse, whichever is later.

year. On July 5, 1995, petitioner was awarded a prospective family allowance in the amount of $6,500 a month for an uncertain duration. In November 1995, the probate court reduced the monthly rate to $5,500. Then, on February 22, 1996, the probate court issued an order providing that any family allowance payments made to petitioner after January 25, 1996 (the one-year anniversary of the testator's death) would be charged as advancements against petitioner's interest in the estate. On March 7, 1996, petitioner filed a petition for nonchargeable family allowance payments retroactive to the date of the testator's death in which she asserted that she would have requested family allowance payments sooner if respondent had not delayed in notifying her of the commencement of the proceedings and of her right to receive a family allow-

---

(3) Notice of right of election shall be served upon the decedent's spouse, if any, and proof of that notice shall be filed with the court. An election as provided by this section may be filed in lieu of service of notice and filing of proof.

(4) In the case of a legally incapacitated person, the right of election may be exercised only by order of the court in which a proceeding as to that person's property is pending, after finding that exercise is necessary to provide adequate support for the legally incapacitated person during that person's life expectancy.

(5) The surviving spouse of a decedent who was not domiciled in this state shall be entitled only to election against the will as may be provided by the law of the place in which the decedent was domiciled at the time of death.

(6) As used in subsection (1), "property derived by the spouse from the decedent," includes all of the following transfers:

(a) A transfer made within 2 years of decedent's death to the extent that the transfer is subject to federal gift or estate taxes.

(b) A transfer made before the date of death subject to a power retained by the decedent which would make the property, or a portion of the property, subject to federal estate tax.

(c) A transfer effectuated by the death of the decedent through joint ownership, tenancy by the entireties, insurance beneficiary, or similar means. [MCL 700.282; MSA 27.5282.]

ance. The probate court denied petitioner's request for retroactive payments without explanation.

Within the statutory period for making her election as a surviving spouse pursuant to MCL 700.282; MSA 27.5282, petitioner notified the probate court that she intended to take her elective statutory share of the estate rather than abide by the terms of the will. Petitioner also filed a petition with the probate court to take a share of the estate as a pretermitted spouse under MCL 700.126; MSA 27.5126.[3] Respondent argued that petitioner was not entitled to take as a pretermitted spouse because she had not been omitted from the will. In an opinion and order, the probate court ruled that petitioner could take as a pretermitted spouse if she was named in the will, as long as she was not named in the will in contemplation of marriage. Because the testator's intent in naming petitioner in his will was a question of fact, the issue was set for trial. The other question of fact to be resolved at trial was whether the testator transferred assets to petitioner outside the will in lieu of a testamentary disposition. After a six-day trial, a jury determined in a special verdict (1) that the testator did not contemplate marriage to petitioner when he executed his will, (2) that the testator provided for petitioner by transfers outside the will, and (3) that these transfers were made in lieu of a testamentary disposition. Accordingly, because of the second and third findings of the jury, the probate court ruled that petitioner was not entitled to take as a pretermitted spouse.

---

[3] Petitioner's decision to take her elective share of the estate did not operate as a waiver of her right to pursue the larger share potentially available to her as a pretermitted spouse. See *In Re Cole Estate*, 120 Mich App 539, 543; 328 NW2d 76 (1982).

Shortly after the trial, respondent moved for reimbursement of the family allowance payments chargeable as advancements against petitioner's interest in the estate. Respondent asserted in his motion that, in addition to foreclosing petitioner's claim as a pretermitted spouse, the testator's nontestamentary transfers to petitioner also reduced the value of her elective share to zero. The probate court granted respondent's motion and ordered petitioner to reimburse the estate $44,000 for family allowance payments paid after January 25, 1996. The probate court also denied petitioner's request to withdraw her election of the statutory spouse's share and to take under the will instead. Finally, the probate court ruled that petitioner was not entitled to any amount of the estate pursuant to her election.

On appeal, petitioner first argues that the probate court erred in instructing the jury that petitioner bore the burden of proof on the issues whether the testator provided for petitioner outside the will and whether the testator intended those transfers to be in lieu of a testamentary provision. Because we are persuaded that petitioner was not entitled to a trial with regard to the issue of her right to take as a pretermitted spouse, we will not address petitioner's argument regarding the proper allocation of the burden of proof.

Instead, we agree with respondent's contention that because petitioner was named in the will, she is precluded as a matter of law from taking as a pretermitted spouse. This argument was rejected by the probate court and is not now raised in a cross appeal. Nevertheless, we may address the argument because respondent is merely urging an alternative ground for

affirming the result reached by the probate court. Although a cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal, a cross appeal is not necessary to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court. *Middlebrooks v Wayne Co*, 446 Mich 151, 166, n 41; 521 NW2d 774 (1994); *Ass'n of Businesses Advocating Tariff Equity v Public Service Comm*, 192 Mich App 19, 24; 480 NW2d 585 (1991). But see *Barnell v Taubman Co, Inc*, 203 Mich App 110, 123; 512 NW2d 13 (1993).

The application of Michigan's pretermitted spouse statute to a surviving spouse named in the will, but not named in contemplation of marriage, is an issue of first impression in Michigan. The statute provides, in pertinent part:

> If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate the omitted spouse would have received if the decedent did not leave a will, unless it appears from the will that the omission was intentional, or unless the testator provided for the spouse by transfers outside the will and the intent that the transfers were in lieu of a testamentary provision is shown by declarations of the testator, by the amount of the transfers, or by other evidence. [MCL 700.126(1); MSA 27.5126(1).]

The primary goal of judicial interpretation of statutes is to ascertain the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547,

567; 495 NW2d 539 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *McFarlane v McFarlane*, 223 Mich App 119, 123; 566 NW2d 297 (1997). If the language used by the Legislature is clear and unambiguous, no further judicial interpretation of the statute is permitted. *Id.*

Unless defined in the statute, every word or phrase of a statute should be understood according to the common and approved usage of the language, taking into account the context in which the words are used. MCL 8.3a; MSA 2.212(1); *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 621; 552 NW2d 657 (1996). When the words are not defined in the statute, a court may consult dictionary definitions. *Id.* *Webster's New Collegiate Dictionary* (1977) defines "omit," in part, as "to leave out or leave unmentioned." In this case, it is undisputed that petitioner, who claims to be an "omitted spouse," was not left out of the will or left unmentioned in the will. Accordingly, under the plain language of the pretermitted spouse statute, petitioner is not eligible to take a share because she was not "omitted" from the testator's will.

Some appellate courts addressing similar provisions in other jurisdictions have allowed surviving spouses to recover against antenuptial wills in cases where they were named in the will in some capacity other than as a spouse. See *Estate of Ganier v Estate of Ganier*, 418 So 2d 256 (Fla, 1982); *In re Estate of Groeper*, 665 SW2d 367 (Mo App, 1984); see also *Miles v Miles*, 312 SC 408; 440 SE2d 882 (1994). These courts have reasoned that such constructions are necessary to protect the surviving spouse from inadvertent disinheritance. *Gainer, supra* at 258; *Groeper,*

*supra* at 369. To reach this result, however, these courts have been forced to read a "contemplation of marriage" requirement into their respective pretermitted spouse statutes, allowing surviving spouses named in the will (but not named in contemplation of marriage) to take against the will as "omitted" spouses, or spouses not "provided for" in the will. See *Gainer, supra* at 260; *Groeper, supra* at 369; *Miles, supra* at 409-411. Other foreign courts have interpreted similar pretermitted spouse statutes more narrowly. See *In re Keeven Estate*, 110 Idaho 452; 716 P2d 1224 (1986); *In re Christensen Estate*, 655 P2d 646 (Utah, 1982). These courts have reasoned that, because the "contemplation of marriage" requirement figured prominently in the common law, its omission from a subsequent statute on the subject should be deemed intentional, and its addition by way of a judicial decision would be inappropriate. *Keeven, supra* at 458; *Christensen, supra* at 649. We are persuaded that the reasoning of these latter courts is more in accordance with our principles of statutory construction.

Contrary to petitioner's contention, our decision is consistent with *In re McPeak Estate*, 210 Mich App 410; 534 NW2d 140 (1995), a case in which this Court was called on to interpret Michigan's pretermitted heir statute, MCL 700.127; MSA 27.5127. In holding that the testator's adopted daughter was not a pretermitted heir because she had been provided for in the testator's will, this Court noted as a matter of fact that the testator was contemplating her adoption at the time of the execution of the will. *McPeak, supra* at 414. However, the Court also specifically noted:

> Our holding comports with the plain language of the pretermitted heir statute . . . . The statute makes no distinction between a devise made to a child as a prospective adoptee and a devise made to a child as a stepchild or in a different status. Rather, the statute simply requires a failure by the testator to provide for his child. [*Id.* at 414-415.]

Likewise, the pretermitted spouse statute makes no distinction between a devise made to a future spouse in contemplation of marriage and a devise made to a future spouse as a friend or in a different capacity. Rather, the statute simply requires a failure by the testator to provide for a surviving spouse in any capacity. If the Legislature sought to include surviving spouses named in the will in some capacity other than spouse within the purview of the pretermitted spouse statute, it could have done so by including a "contemplation of marriage" requirement in the plain language of the statute.[4] Finally, we note that Michi-

---

[4] For example, the 1993 amended version of the Uniform Probate Code contains an explicit "contemplation of marriage" requirement in its "pretermitted spouse" section, which provides:

(a) If a testator's surviving spouse married the testator after the testator executed his [or her] will, the surviving spouse is entitled to receive, as an intestate share, no less than the value of the share of the estate he [or she] would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised to a descendant of such a child or passes under Sections 2-603 or 2-604 to such a child or to a descendant of such a child, unless:

(1) it appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;

(2) the will expresses the intention that it is to be effective notwithstanding any subsequent marriage; or

(3) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary

gan's elective share provision, which does not require omission from the testator's will, is available to offer some protection to surviving spouses like petitioner. See MCL 700.282; MSA 27.5282.

Because petitioner was named in the will, she could not succeed in her claim to be a pretermitted spouse. Therefore, because she was not entitled to a trial regarding the issue of her right to take as a pretermitted spouse, she is not entitled to the relief requested on appeal. Moreover, we need not address her second argument regarding the probate court's exclusion of expert testimony during the trial.

Petitioner next argues that the probate court erred in terminating petitioner's nonchargeable family allowance after only seven months. Although petitioner frames this issue in terms of her right to a continuation of nonchargeable monthly family allowance payments during the five months immediately following the one-year anniversary of the testator's death, her argument is based on the fact that she did not receive any nonchargeable monthly family allowance payments during the five months immediately following the testator's death. Accordingly, we will construe this issue as one contesting the probate court's decision to deny her petition for nonchargeable family

provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.

(b) In satisfying the share provided by this section, devises made by the will to the testator's surviving spouse, if any, are applied first, and other devises, other than a devise to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse or a devise or substitute gift under Sections 2-603 or 2-604 to a descendant of such a child, abate as provided in Section 3-902. [Uniform Probate Code, § 2-301 (emphasis added).]

allowance payments retroactive to the date of the testator's death. Cast in these terms, we agree that the probate court was in error. Whether petitioner was entitled to a retroactive spousal allowance is a question of statutory interpretation. Statutory interpretation is a question of law that is reviewed de novo. *Rose Hill Center, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997).

The issue whether a surviving spouse, after filing a petition for family allowance payments, is entitled to payments retroactive to the time of the decedent's death has not been squarely addressed by Michigan's appellate courts. Once again, our analysis is guided by the plain language employed by the Legislature. Under the family allowance statute, MCL 700.287; MSA 27.5287, a surviving spouse is "entitled" to a reasonable family allowance "during the progress of the settlement of the estate . . . ." The allowance "paid for the 1 year" has priority over all other claims. After one year, on a showing of necessity, the payments may be continued as advancements against the surviving spouse's interest in the estate. The statute provides that the family allowance "shall" be granted upon petition to the court and nothing in the statute precludes a retroactive grant of payments for the period between the time of the testator's death and the time of the filing of the petition. *Id.* On the basis of the unambiguous statutory language, we conclude that the Legislature's intent in drafting the family allowance statute was to provide for the support of surviving spouses (and the other persons designated in the statute) during the period between the decedent's death and the distribution of the estate.

Our conclusion is bolstered by the Michigan Supreme Court's interpretation of the predecessors of the current family allowance statute. In construing a set of statutes substantially similar to MCL 700.287; MSA 27.5287, the Supreme Court explained that, as a matter of law, a surviving spouse is "absolutely entitled" to family allowance payments for a period of one year from the time of the decedent's death. *Bacon v Kent Co Probate Judge*, 100 Mich 183, 186-188; 58 NW 835 (1894); see also *Pulling v Wayne Co Probate Judge*, 88 Mich 387, 389-390; 50 NW 319 (1891). Because petitioner was entitled to receive one full year of nonchargeable family allowance payments from the time of the testator's death, including the five months immediately following the testator's death, the probate court erred in failing to grant petitioner's request for nonchargeable family allowance payments retroactive to the time of the testator's death. The determination of the amount of a family allowance is left to the sound discretion of the probate court. *In re Burton Estate*, 145 Mich App 133, 137; 377 NW2d 364 (1985). On remand, the probate court is directed to order respondent to pay petitioner from the estate a reasonable family allowance attributable to the five months immediately following the testator's death.

Petitioner next argues that the probate court erred in denying her request to withdraw her election of the statutory spouse's share and to take under the will instead. We disagree. Under the spouse's election statute, MCL 700.282; MSA 27.5282, the surviving spouse of a decedent domiciled in Michigan who dies testate may elect to either (1) abide by the terms of the will or (2) take a portion of the share that would have

passed to the surviving spouse had the decedent died intestate. The surviving spouse must make the election within sixty days after the date for presentment of claims, or within sixty days after the filing of the proof of service of the inventory upon the surviving spouse, whichever is later. *Id.*

As a general rule, we think that a surviving spouse should not be permitted to withdraw an election after the statutory period for making such an election has passed. To allow untimely withdrawals simply as a matter of course would render the statute's sixty-day time limit for making elections essentially meaningless. See *In re Quintero Estate*, 224 Mich App 682, 699; 569 NW2d 889 (1997) ("We will avoid statutory constructions that render a statute, or any part of it, surplusage or nugatory."). In support of her argument that she should have been allowed to withdraw her election and take under the will, petitioner argued to the probate court, and now argues to this Court, that her election was uninformed because the initial inventory of the estate provided by respondent allegedly contained factual errors. In her briefs on appeal, however, petitioner fails to adequately apprise this Court of the specific factual "errors" or even the extent of those errors. Petitioner also failed to apprise the probate court of the specific factual errors when she requested to withdraw her election. Accordingly, we are unable to consider their effect on petitioner's request to withdraw her election.

Finally, petitioner asserts in her statement of questions involved that the trial court failed to make a finding regarding the amount of her elective share. Although the probate court made no explicit findings regarding the amount of property derived by peti-

tioner from the testator by means other than testate or intestate succession upon the testator's death, it did find that petitioner was not entitled to any amount pursuant to her election.[5] Because petitioner provides no real argument or authority for the proposition that the probate court was required to make specific and explicit findings regarding each aspect of the elective share calculation, we deem this issue to have been waived for purposes of this appeal. See *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996).

Affirmed in part, reversed in part, and remanded. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full. We do not retain jurisdiction.

---

[5] In his motion for entry of judgment and reimbursement of chargeable spousal allowance, respondent asserted that, viewing the evidence from the trial in a light most favorable to petitioner, one half of the value of the property derived by petitioner from the testator by means other then testate or intestate succession upon the testator's death exceeded one quarter of the value of the estate. On the basis of these figures, which were adduced at trial, respondent asserted that the value of petitioner's elective share was zero. By granting respondent's motion, the trial court implicitly accepted these figures.