### In the ESTATE OF John Henry FERGUSON, Deceased.

#### Nos. ED 82263, ED 82264.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 3, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 22, 2004.

Application for Transfer Denied April 27, 2004.

Scott O. Marshall, Clayton, MO, Daniel R. Schramm, Chesterfield, MO, for appellants.

Michael P. Gunn, Thomas F. Bakewell, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Judge.

The appellants, the adult children of the decedent, John Henry Ferguson, appeal the probate court's judgment finding that Ruth Hensler–Ferguson, the decedent's spouse at the time of his death, is an omitted spouse within the meaning of section 474.235 RSMo. (1994),[1] and thus is entitled to the share of the decedent's estate that she would have received had the decedent died intestate. The appel-

lants allege the probate court erred in conducting a hearing and ruling on the spouse's omitted-spouse claim while she had a pending election to take against the decedent's will that she had not rescinded. The appellants further allege the probate court erroneously applied the law in finding the spouse was an omitted spouse, and that the court's findings are not supported by substantial evidence. We affirm.

### Factual and Procedural Background

The decedent executed a will and revocable trust in November of 1993. At the time of their execution, the decedent and Ms. Hensler had been living together for approximately eleven years. Thereafter they married in November of 1997. The decedent died on March 13, 2000, survived by his spouse and the appellants in this case.

As is pertinent to this appeal, the decedent's will provided for the disposition of his tangible personal property by a written list, but if such a list was not found or if it was ineffective to dispose of all of the tangible personal property, such property was to be distributed to Ms. Hensler whom the decedent described as his "beloved friend." The will also contained a general pour-over provision which transferred all the rest, residue, and remainder of the decedent's property to the trust. The evidence reveals that the decedent's intent was for all his assets to flow through the trust. Under the trust's terms, Ms. Hensler received a life estate in the decedent's primary residence, located on Bald Eagle Road. Mortgage payments, property-insurance payments, property-tax payments, as well as maintenance expenses necessary to keep the home in "all-around good condition" are to be paid out of the trust. The

---

1. All further statutory references are to RSMo. (1994), the codification of the Missouri statutes in effect at the time of the decedent's death.

decedent purchased this residence in 1983, and transferred it to the trust in 1993. Under the trust, the residence passes to the decedent's children upon Ms. Hensler's death.

The decedent made no changes to his will after his marriage to Ms. Hensler. The decedent spoke with his attorney in early 1999, and questioned whether he could amend his trust, as he was interested in providing substantially more for his spouse. However, he made no changes at that time. The decedent met with his attorney a few months later, in the summer of 1999, again stating he wanted to make some changes to his estate documents. The decedent expressed his wish to provide substantially more for his spouse, that he wanted her to have an allowance. According to the attorney's testimony, the decedent wanted to give her a yearly stipend, and to benefit from, or have access to, the trust principal. Yet again, the decedent met with his attorney in the fall of 1999, and discussed his desire to change his estate plans. Despite these meetings, the decedent never specified what changes he wanted made, and consequently, no changes to the decedent's will or trust were ever made. On the day of his death, the decedent met with another attorney. Concerned that his spouse be taken care of, and wanting to insure his spouse would be able to stay in the Bald Eagle Road residence, the decedent signed a beneficiary deed, leaving the Bald Eagle residence to his spouse for her life, and upon her death, to the decedent's three children. As this attorney testified, this beneficiary deed was of no effect, because the residence already belonged to the trust.

After the decedent's death, his spouse filed for a homestead allowance, a family allowance, and an exempt-property allowance. Pursuant to these filings, she received a $15,000 homestead allowance, a $6,000 family allowance, a car valued at $10,000, and various household furnishings and personal items valued at $500. His spouse also filed an election pursuant to section 474.160 to take against the decedent's will.[2] An amended statement of account was filed by the personal representative, in which he calculated the net amount due to the spouse under her election as a negative balance. The spouse filed numerous objections to this statement of account, including her assertion that the calculation of the elective share was inaccurate because she should receive one-half of the net estate as the omitted spouse of the decedent.[3] After a hearing on the objections, the probate court found the spouse was an omitted spouse within the meaning of section 474.235, that she was not otherwise provided for outside the will, and thus she was entitled to a share of the decedent's estate which she would have received had the decedent died intestate. The decedent's children now appeal.[4]

### Standard of Review

■■■ We review the probate court's decision according to the standard announced in *Murphy v. Carron*, 536 S.W.2d

---

**2.** Pursuant to section 474.160.1(1), because there are lineal descendants of the decedent, the spouse would be entitled to receive one-third of the decedent's estate, subject to the payment of claims.

**3.** Pursuant to section 474.010(1)(c), because there are surviving issue of the decedent, none of whom are issue of the spouse, this share amounts to one-half of the intestate estate.

**4.** The case is before us on consolidated appeal. Two of the decedent's children, Catherine Lynn Ferguson and John Henry Ferguson, Jr., appeal together; the third child of the decedent, Claire Ferguson Beck, appeals separately.

30 (Mo. banc 1976). *In re Estate of Weddle*, 84 S.W.3d 144, 146 (Mo.App. W.D. 2002). On review of this bench-tried case, we will affirm the court's judgment unless there is no substantial evidence to support the court's decision, the decision is against the weight of the evidence, or the court erroneously declares or applies the law. *Id.; Murphy*, 536 S.W.2d at 32; *Estate of Groeper v. Groeper*, 665 S.W.2d 367, 369 (Mo.App. E.D.1984). When determining the sufficiency of the evidence we accept as true the evidence and inferences therefrom that are favorable to the court's decision and disregard all contrary evidence and inferences. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Due regard is given to the opportunity of the court to have judged the credibility of the witnesses. *Id.* The court is free to believe or disbelieve all, part, or none of the testimony of any witness, even if uncontradicted. *Id.*

### Discussion

The appellants challenge the court's judgment finding that spouse is an omitted spouse in three different manners. First, the appellants allege the court erred in even conducting a hearing and ruling on the spouse's omitted-spouse claim while she had a pending election to take against the decedent's will. Secondly, the appellants assert the court misapplied the law in finding that spouse is an omitted spouse by imposing a "contemplation of marriage" test under the omitted-spouse statute. And finally, the appellants allege the court's finding is not supported by substantial evidence. We address each allegation in turn.

The appellants first allege the court erred in conducting a hearing and ruling on the spouse's omitted-spouse claim while she had a pending election to take against the decedent's will. At the outset of the hearing, counsel for appellant Beck moved to strike the spouse's claim, arguing that as long as the spouse's election had not been rescinded, it was inappropriate for the court to entertain a competing claim that the spouse was an omitted spouse. The probate court denied appellant Beck's request, stating that the spouse had a right to file for the omitted share irrespective of whether she had an election pending, that the two were not mutually exclusive. Continuing, the court reasoned that the spouse had the right to rescind the election at any time, and that she could not make a proper determination of whether to rescind the election until she knew what her status was under the omitted-spouse statute.

In arguing that the court erred in denying Appellant Beck's motion to strike and proceeding with the hearing on the spouse's omitted-spouse claim, the appellants' posit that an election and a claim for an omitted-spouse share are mutually exclusive. The appellants argue that the spouse's election to take against the decedent's will binds her unless she rescinds the election, which the appellants claim would not be permitted in this case. The appellants thus contend that the court failed to recognize the limited right given to a surviving spouse under section 474.163.6 to rescind an election against a will. The Ferguson appellants additionally argue that by electing to take against the decedent's will, the spouse is barred from proceeding with her omitted-spouse claim by the equitable doctrine of election of remedies.

We do not agree with the appellants' position that an election to take against a will and an omitted-spouse claim are necessarily mutually exclusive. We find nothing in the statutory language allowing for an election to take against a will or in the omitted-spouse statute indicating that the

two are mutually exclusive. And, despite their arguments, the appellants have not cited us to any case for their proposition that because a surviving spouse has made an election to take against the will, such surviving spouse is barred from pursuing an omitted-spouse claim to determine which avenue would be most beneficial to such surviving spouse.

Nor do we find a limitation on a surviving spouse's ability to rescind a prior election. The appellants argue the only legal basis permitted for rescinding an election is set forth in section 474.163.6—that a rescission is only permitted if the elective share, as computed under section 474.163, is less advantageous to the surviving spouse than the provision for that spouse under the will. In this case, the spouse has not rescinded her election, and the appellants argue she would not be permitted to rescind her election because she did not present evidence demonstrating that taking under the decedent's will would be more advantageous to her than a statutory elective share, a showing that in this case the spouse would be unable to make. Section 474.163.6 is a subsection of the statute setting forth how an estate is valued for the purposes of taking against a will. This subsection provides that "if it appears that the elective share given by section 474.160, as computed in accordance with this section, will be less advantageous to the surviving spouse than the provision made for that spouse by will, the surviving spouse may rescind the election to take against the will." Although this subsection does authorize a surviving spouse to rescind an election if the elective share proves less advantageous, it does not state that this is the *only* circumstance when a surviving spouse may rescind an election to take against the will, as the appellants contend. Of course, a surviving spouse is permitted to compare an elective share against the will provisions, so that she might choose the more advantageous avenue. Similarly, we find nothing in the statutory scheme that prohibits a surviving spouse from pursuing a determination under the omitted-spouse statute to allow its comparison against the elective share, so that the surviving spouse might choose the more advantageous of these two avenues of recovery.

■ Neither is the equitable doctrine of election of remedies a bar to the spouse's omitted-spouse claim. Election of remedies is a doctrine of estoppel. *Altmann v. Altmann*, 978 S.W.2d 356, 362 (Mo.App. E.D.1998). The doctrine provides that where a party has the right to pursue one of two inconsistent remedies and makes an election, institutes suit, and prosecutes it to final judgment, that party cannot thereafter pursue another and inconsistent remedy. *Id.* For theories to be inconsistent, the one theory must allege what the other denies, or the theory of the one must necessarily repudiate or be repugnant to the other. *Davis v. Hauschild*, 243 S.W.2d 956, 960 (Mo.1951); *Altmann*, 978 S.W.2d at 362. Here, the appellants argue that the spouse's election to take against the decedent's will and her omitted-spouse claim are inherently inconsistent. However, we need not reach this question. The election-of-remedies doctrine only operates when a party has pursued an inconsistent remedy to final judgment. *Cook v. Holcomb*, 854 S.W.2d 78, 80 (Mo.App. E.D.1993); *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 506–7 (Mo. banc 1993). The spouse's election to take against the decedent's will has not proceeded to final judgment, and thus, the election-of-remedies doctrine is not yet in play and does not operate to preclude the spouse from pursuing her omitted-spouse claim at this juncture.

Concluding, we discern no error in the trial court's denying the motion to strike

and proceeding with the spouse's omitted-spouse claim while she had a pending election pursuant to section 474.160 to take against the decedent's will. Points denied.

Next, the appellants allege the probate court misapplied the law in finding the spouse is an omitted spouse by imposing a "contemplation of marriage" test under the omitted-spouse statute, section 474.235.

Section 474.235, the omitted-spouse statute, provides in part:

If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will, unless it appears from the will that the omission was intentional or that the testator provided for the spouse by transfer outside the will, and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator, the amount of the transfer or other evidence.

Section 474.235.1. The appellants recognize that this court applied a "contemplation of marriage" test to determine if a surviving spouse was inadvertently omitted in the case of *Estate of Groeper. v. Groeper*, 665 S.W.2d 367 (Mo.App. E.D. 1984). In that case, in determining whether a surviving spouse was "provided for" by will, this court held that when a will executed before marriage contains a provision for a named individual who later becomes the testator's spouse, the surviving spouse has the burden of proving that the provision was not made in contemplation of marriage. *Groeper*, 665 S.W.2d at 369. If the testator did not contemplate the named individual as a future spouse, then that individual is not provided for by testamentary means pursuant to section 474.235. *Id.* In this case, there is no dispute that the decedent and the spouse married some years after the decedent executed his will, and that there was no discussion about marriage until approximately one week prior to the marriage. Given our holdings in *Groeper*, if in fact the probate court did impose a "contemplation of marriage" requirement, we cannot say the probate court misapplied the law.

The appellants, however, request that we reconsider and reject this "contemplation of marriage" test set forth in *Groeper*. The appellants argue that Missouri's omitted-spouse statute makes no reference to any "contemplation of marriage" requirement. As the appellants point out, Missouri's omitted-spouse statute, section 474.235, is based on Section 2–301 of the Uniform Probate Code as it existed prior to its 1993 revision. *In re Estate of Honse*, 694 S.W.2d 505, 509 (Mo.App. S.D. 1985). Section 2–301 was amended in 1993 to include express language regarding a "contemplation of marriage" requirement.[5] To date, the Missouri legislature has not adopted such language.

The appellants cite us to other states' decisions regarding the applicability of an

---

5. The 1993 amended version of the Uniform Probate Code provides:

(a) If a testator's surviving spouse married the testator after the testator executed his [or her] will, the surviving spouse is entitled to receive, as an intestate share, no less than the value of the share of the estate he [or she] would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is de-

vised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised to a descendant of such a child or passes under Sections 2–603 or 2–604 to such a child or to a descendant of such a child, unless:

(1) it appears from the will or other evidence that the will was *made in* contempla-

omitted-spouse statute to a surviving spouse named in the will in some capacity other than spouse, wherein the courts have rejected the "contemplation of marriage" test. *See Estate of Christensen v. Christensen*, 655 P.2d 646 (Utah 1982); *Matter of Estate of Keeven*, 110 Idaho 452, 716 P.2d 1224 (1986); *Estate of Herbach*, 230 Mich.App. 276, 583 N.W.2d 541 (1998). In refusing to read a "contemplation of marriage" test into their respective omitted-spouse statutes, those courts reasoned that even though contemplation of marriage figured prominently in the statutes and case law prior to the enactment of the Uniform Probate Code, its omission from the Uniform Probate Code and subsequent state statutes must have been deliberate, and its addition by way of a judicial decision would be inappropriate. *Christensen*, 655 P.2d at 650; *Keeven*, 716 P.2d at 1230; *Herbach*, 583 N.W.2d at 545. And thus, those courts find that a testator can provide by will for his surviving spouse in such a way as to prevent such spouse from being an omitted spouse under the statute, even though the devise was not expressly made in contemplation of marriage. *See Keeven*, 716 P.2d at 1230. However, those courts also acknowledge that a devise in a will can be so minimal, and made in such a way, that it appears the testator "failed to provide by will for his surviving spouse." *See Id.* In these jurisdictions, in order to prove that the testator failed to provide by will, and thus be considered as an omitted

spouse, the surviving spouse has the burden of proving that the testamentary gift specified before the marriage could not reasonably represent the testator's effort to provide by will for the surviving spouse. *See Id.* The appellants request this court to reconsider and reject the "contemplation of marriage" test set forth in *Groeper* and adopt this "testator's intent" approach of these other jurisdictions. Despite their reasonable argument, we decline the appellants' invitation. We continue to believe that our holdings in *Groeper* are correct. Points denied.

■ Lastly, the appellants allege the trial court's finding that the decedent's spouse is an omitted spouse within the meaning of section 474.235 is not supported by substantial evidence.

As discussed earlier, under section 474.235, a surviving spouse who married the testator after the execution of the will is entitled to the same share of the testator's estate as if he died intestate if the testator fails to provide for the surviving spouse by will, unless it appears from the will that the omission was intentional or the testator provided for the spouse by transfer outside the will, and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator, the amount of the transfer, or other evidence.

In this case, there is no dispute that the spouse married the decedent after the exe-

tion of the testator's marriage to the surviving spouse;

(2) the will expresses the intention that it is to be effective notwithstanding any subsequent marriage; or

(3) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.

(b) In satisfying the share provided by this section, devises made by the will to the

testator's surviving spouse, if any, are applied first, and other devises, other than a devise to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse or a devise or substitute gift under Sections 2–603 or 2–604 to a descendant of such a child, abate as provided in Section 3–902. Uniform Probate Code, § 2–301 (emphasis added); *See also, Estate of Herbach*, 230 Mich.App. 276, 583 N.W.2d 541 (1998).

cution of his will. The court found that the spouse received nothing from the decedent by the provisions of his will. The only provision of decedent's will in which the spouse's name appears is as a devisee of the decedent's personal property. As the court found, the net effect of this provision provided the decedent's spouse with a car valued at $10,000 and certain household furnishings valued at $500, all of which the spouse claimed as exempt property under section 474.250. Given these circumstances, we find there is substantial evidence that the decedent failed to provide for the spouse by will. Accordingly, the spouse is entitled to the statutory omitted-spouse share set forth in section 474.235, unless there is evidence one of the two statutory exceptions.

As to the first exception, the court found no evidence that the omission of provisions for the spouse from the decedent's will was intentional and the parties do not contest this finding.

As to the second exception, a surviving spouse is not entitled to the statutory share under section 474.235 if it appears from the will that the testator provided for the spouse by transfer outside the will, and the intent that the transfer be in lieu of a testamentary provision is shown by evidence. In this case, there is nothing in the language of the decedent's will itself indicating that the decedent provided for the woman who would become his spouse by transfer outside the will. Further, the court found there was no evidence that the decedent provided for her by transfers outside the will. As noted by the court, the only provision for Ms. Hensler in the decedent's trust was a life estate in the Bald Eagle residence, with payment of certain expenses for the residence to be paid for out of the trust. There were no provisions in the trust for any support or other usual day-to-day living expenses of Ms. Hensler. While she did receive dece-

dent's public-school retirement death benefit, this amounted to a net payment of only $4,000. Based on the foregoing, there is substantial evidence supporting the trial court's conclusion that the decedent did not provide for Ms. Hensler by transfer outside the will.

Even if it could be said that the decedent did provide for her by transfer outside the will, there is no evidence that any transfers were intended to be in lieu of a testamentary provision for her. There was no evidence that the decedent made any statements that any transfers were intended to be in lieu of a testamentary provision. Rather, the evidence shows that on numerous occasions the decedent inquired into changing his estate plan, and expressed his desire to provide substantially more for his spouse. Further, the court found that the amount of any transfers outside the will did not evidence intent on the part of the decedent that the transfers outside the will were intended to be in lieu of a testamentary provision. There is substantial evidence to support the court's finding. As found by the court, the decedent's gross estate for federal estate tax purposes was in excess of $1,000,000, and the residue of the decedent's Missouri probate estate was valued at approximately $437,000. Of this, his spouse received the public-school retirement benefit, and the life estate, valued at anywhere from $144,00 to $148,000.

Concluding, the court's finding that the spouse was an omitted spouse within the meaning of section 474.235 is supported by substantial evidence. Points denied.

The judgment is affirmed.

WILLIAM H. CRANDALL, JR., P.J., and BOOKER T. SHAW, J., concur.