# STATE OF MICHIGAN

# COURT OF APPEALS

ADEL ALI and EFADA ALI,

        Plaintiffs-Appellants,

and

DEARBORN SPINE CENTER, PLLC,

        Intervening Plaintiff,

v

GEICO INDEMNITY COMPANY,

        Defendant,

and

DAVID OWEN CLARK,

        Defendant-Appellee.

UNPUBLISHED
October 16, 2018

No. 339102
Wayne Circuit Court
LC No. 16-001652-NI

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Plaintiffs Adel and Efada Ali appeal as of right the trial court's final order of dismissal and, by extension, an earlier order granting summary disposition in favor of defendant, David Owen Clark. Because we agree that the trial court erred by granting summary disposition in Clark's favor, we reverse and remand for further proceedings.

Plaintiffs contend that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(10) because material questions of fact existed as to whether plaintiffs had established serious impairments of body function pursuant to the no-fault act, MCL 500.3101 *et seq.*, and specifically, as to whether their impairments were objectively manifested.

"The trial court's ruling on a motion for summary disposition is reviewed de novo on appeal." *ZCD Transp, Inc v State Farm Mut Auto Ins Co,* 299 Mich App 336, 339; 830 NW2d 428 (2013). Summary disposition pursuant to MCR 2.116(C)(10) is appropriate where "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial

-1-

judgment as a matter of law." *Id.*, quoting MCR 2.116(C)(10) (quotation marks omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010) (quotation marks and citation omitted). In reviewing a motion brought pursuant to MCR 2.116(C)(10), this Court considers "affidavits, pleadings, depositions, admissions, and documentary evidence submitted or filed in the action to determine whether a genuine issue of any material fact exists to warrant a trial." *ZCD Transp, Inc*, 299 Mich App at 339-340 (quotation marks and citation omitted). "[R]eview is limited to the evidence that [was] presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

MCL 500.3135 defines tort liability for injuries stemming from automobile accidents, and provides, in pertinent part:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

> (2) For a cause of action for damages pursuant to subsection (1) filed on or after July 26, 1996, all of the following apply:

> (a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

> (i) There is no factual dispute concerning the nature and extent of the person's injuries.

> (ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. . . .

> \* \* \*

> (5) As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life.

In order to establish a "serious impairment of a body function," a plaintiff must show: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010).

On appeal, plaintiffs argue that the trial court erred by finding that they failed to demonstrate the existence of objectively manifested impairments. As the Supreme Court

explained in *McCormick*, "[A]n 'objectively manifested' impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *Id*. at 196. In considering this prong of the threshold injury inquiry, the focus is on "whether the *impairment* is objectively manifested, not the *injury* or its symptoms." *Id*. at 197. Subjective complaints of pain and suffering are insufficient unless supported by evidence demonstrating a physical basis for the complaints. *Id*. at 197-198.

The parties produced plaintiffs' medical records from before and after the accident in connection with Clark's motion for summary disposition.[1] Throughout their postaccident medical records, both plaintiffs complained of constant aching pain in their necks, upper backs, and lower backs. Plaintiffs' treating physicians performed various physical tests to evaluate their complaints, many of which had positive results. Several physicians also observed and noted reduced range of motion in plaintiffs' cervical and lumbar regions. MRIs of Adel's spine showed a "[d]isc bulge with asymmetric bilateral facet joint hypertrophy . . . compressing the thecal sac and causing moderate left neuroforaminal narrowing" at the L4 to L5 level; a "[d]isc bulge with posterocentral protrusion type herniation . . . compressing the thecal sac" at the L5 to S1 level; and small disc herniation at the C4 to C5 and C5 to C6 levels. Efada's cervical spine MRI revealed a central disc herniation at C4 to C5, and her lumbar spine MRI showed the following results:

> T11-T12: Disc bulge is seen, compressing the ventral thecal sac.

> T12-L1: Moderate reduction in the intervertebral disc height is seen with posterocentral herniation and annular tears, compressing the thecal sac and causing mild spinal canal stenosis with indentation upon the ventral conus.

> * * *

> L2-L3: Disc bulge with left foraminal propensity and bilateral facet joint hypertrophy is seen, compressing the thecal sac and causing mild to moderate left neuroforaminal narrowing.

> L3-L4: Disc bulge with left foraminal protrusion type herniation is seen, compressing the thecal sac and causing moderate left neuroforaminal narrowing.

> L4-L5: Disc bulge is seen, compressing the thecal sac and causing mild bilateral neuroforaminal narrowing.

---

[1] We note that plaintiffs attached medical statements to their motion for reconsideration before the trial court that undoubtedly would have been significant enough to create material issues of fact. However, this Court's review of a motion for summary disposition is limited to the evidence available *at the time the motion was decided*, and in reviewing the motion, this Court does not consider evidence on appeal that was first presented in a subsequent motion for reconsideration. *Innovative Adult Foster Care, Inc*, 285 Mich App at 474 n 6.

L5-S1: Disc bulge with left foraminal herniation is seen, compressing the thecal sac and causing moderate left neuroforaminal narrowing.

Despite the subjectivity of plaintiffs' complaints of pain and suffering, they provided objective medical evidence to establish a physical basis for their complaints which created a genuine issue of material fact. See *id*. at 197-198. In addition, plaintiffs' physicians observed some aspects of their respective impairments, including reduced range of motion. That Clark provided contradictory evidence does not entitle him to summary disposition, but rather, evidences a genuine issue of material fact when viewed in a light most favorable to plaintiffs. Accordingly, the trial court erred by granting Clark's motion for summary disposition.

Clark contends that there is no genuine issue of material fact because plaintiffs failed to establish an explicit causal relationship between the accident and plaintiffs' impairments. Although Clark presents this argument as one concerning the objectively manifested impairment requirement, just as he did before the trial court, the issue of causation is distinct from the threshold injury inquiry. See *Patrick v Turkelson*, 322 Mich App 595, 615-616; 913 NW2d 369 (2018). Nonetheless, because a successful argument concerning causation would entitle Clark to summary disposition, albeit on different grounds, we will consider the merits of Clark's contention. See *Adell Broadcasting v Apex Media Sales*, 269 Mich App 6, 12; 708 NW2d 778 (2005) (explaining that this Court can affirm a ruling on grounds that were presented to, but not decided by, the trial court); *In re Herbach Estate*, 230 Mich App 276, 284; 583 NW2d 541 (1998) (stating that an appellee may argue an alternative ground for affirmance).

Proximate causation is an element of every claim sounding in negligence, *Patrick*, 322 Mich App at 616, and a tortfeasor is only exposed to liability under the no-fault act for "noneconomic losses *caused* by his or her ownership, maintenance, or use of a motor vehicle . . . ," MCL 500.3135(1) (emphasis added). Proximate cause consists of two components: factual causation and legal causation. *Patrick*, 322 Mich App at 616. Factual causation exists where the evidence demonstrates that, more likely than not, the plaintiff would not have been injured but for the defendant's negligent conduct. *Id*. at 617. "Although causation cannot be established by mere speculation, a plaintiff's evidence of causation is sufficient at the summary disposition stage to create a question of fact for the jury if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Id*. (quotation marks and citations omitted). "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Id*. (quotation marks and citation omitted; alteration in original).

Efada's preaccident medical records indicate that she began complaining of recurrent lower back pain of midlevel intensity several years before the accident, which worsened with physical activities like walking and standing. Her pain was effectively treated with ibuprofen, acetaminophen, and topical pain relief products. After the accident, Efada reported constant and intermittent pain of increased severity in her lower back and, apparently for the first time, indicated that she was experiencing intense pain in her upper back and neck. Several months later, Efada's pain was also radiating to her arms. In addition to analgesic medication, Efada was

prescribed physical therapy and chiropractic treatment after the accident, as well as epidural steroid injections to treat her pain.

Adel's preaccident medical records also reflected preexisting complaints of neck and back pain that he generally rated as low or middling severity. Preaccident imaging studies revealed "[c]entral disc herniations at C4-C5 and C5-C6," a "[s]uperimposed annular tear at C5-C6 with an additional annular tear posterocentral disc at C3-C4," and several minimal disc bulges in his lumbar region. However, Adel was able to tolerate the pain and testified that he previously worked on his feet 10 hours a day, four days a week; performed basic repairs on his home; and performed other daily tasks at home without assistance. After the accident, Adel's back and neck pain worsened to the point that he could no longer work and he required assistance with household tasks and childcare.

Although Clark presented evidence demonstrating that both plaintiffs reported similar complaints of back and neck pain long before the subject automobile accident, as well as expert opinions disputing plaintiffs' contentions that their injuries arose from the automobile accident, an injured party may still be entitled to recover damages if the tortfeasor's negligence aggravated a preexisting condition or caused new symptoms. See *Wilkinson v Lee*, 463 Mich 388, 394-397; 617 NW2d 305 (2000); *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009). Thus, despite the possibility that plaintiffs' injuries were the product of degenerative or preexisting conditions, a reasonable fact-finder could still conclude that a logical sequence of cause and effect existed because the extent of plaintiffs' pain purportedly increased to the point of becoming debilitating only after the accident occurred. "Additionally, injuries of various kinds . . . are obviously a foreseeable result of negligently causing a motor vehicle accident," *Patrick*, 322 Mich App at 620, and Clark does not appear to contest legal causation in any event. Accordingly, plaintiffs presented evidence of the required causal nexus which, viewed in the light most favorable to them, precludes summary disposition.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica